F. S. KOSMERL and Others v. S. F. MUELLER and Others.[1]

December 24, 1903.

Nos. 13,762—(195).

**Evidence—Heirship.**

The principal question involved in this appeal, an action to quiet title, is the sufficiency of the evidence to sustain the finding of the trial court that the appellant claimants were not the heirs of the deceased, through whom respondents claim title. *Held*:

1. Such finding is sustained by the decided weight of the evidence.

2. No reversible errors are found in the rulings upon the questions involved in this appeal.

3. The court acted within the limits of a reasonable discretion in refusing to order a new trial upon the ground of newly discovered evidence.

Action in the district court for St. Louis county to determine the adverse claims of defendants to vacant and unoccupied land. The case was tried before Cant, J., who found in favor of plaintiffs. From an order denying a motion for a new trial, and from a judgment entered pursuant to the findings, Katharina Mueller and certain other defendants appealed. Affirmed.

[1] Reported in 97 N. W. 660.

*Thomas Hislop* and *Marion Douglas,* for appellants.

*Francis W. Sullivan* and *Davis, Kellogg & Severance,* for respondents.

LEWIS, J.

This action was commenced by respondents to quiet title to certain land in St. Louis county, which, in his lifetime, was owned by one Johann Mueller, patent having been issued to him on May 11, 1893. Mueller executed two mortgages upon the land—one to Marshek, of date December 31, 1895; and one to Kosmerl, of date November 3, 1897. These mortgages were both foreclosed, and respondents claim title under such foreclosure sales, and also under a quitclaim deed executed by Mueller to one Peter Schweitzer, of date December 7, 1898. On December 28, 1898, Johann Mueller died, and on or about February 5, 1900, an attempted redemption was made from the foreclosure sale of one of the mortgages by a creditor of Mueller, who was appointed special administrator. Such being the condition with reference to the title of the property, this suit was commenced by respondents March 14, 1900, making parties defendant the administrator of the estate of Johann Mueller, Peter Schweitzer, and wife, the unknown heirs of Johann Mueller, and all other persons or parties unknown claiming any right, title, estate, or interest in the premises. Several separate and independent sets of heirs appeared as defendants: One, known as the "Detroit heirs," being Katharina Mueller and her six children, claiming to be the wife and children of Johann Mueller, deceased; second, certain parties of Bohemia, claiming to be brothers and sisters of the deceased, and his only surviving heirs. There were also other appearances by parties claiming to be the only surviving heirs, but whose rights do not seem to be involved in this appeal.

The trial involved the following propositions: (1) Did the special administrator of the Johann Mueller estate make a valid redemption of the premises from the Marshek mortgage foreclosure? (2) Was the Kosmerl mortgage legally foreclosed? (3) Was the deed executed and delivered by Johann Mueller to Peter Schweitzer a valid one? (4) Was Johann Mueller, of Duluth, the husband and father of the Detroit claimants, or was he the brother of the Bohemian claimants?

After a prolonged trial, during which the identity of the decedent was

most thoroughly investigated, the court found that the Marshek mortgage was duly foreclosed, and that no redemption from the sale thereunder was ever made; that the Kosmerl mortgage was properly foreclosed; that the Schweitzer deed was valid, and that respondents acquired a valid title under such foreclosure proceedings and as grantees of Schweitzer. The court further found that at the time of his death Johann Mueller was an unmarried man, and that the Detroit claimants were not in any way related to him; that the claimants of Bohemia were the rightful heirs; and that none of the other defendants who appeared had any right, title, or interest in the estate, and judgment was ordered for respondents that they were the owners in fee simple of the premises, and that none of the defendants had any claim, right, title, or interest therein.

Application was made by the Detroit claimants for a new trial upon the ground that the decision was not justified by the evidence, and contrary to law; for errors in law and in the rulings of the court occurring at the trial; and upon the further ground of newly discovered evidence, which they could not with reasonable diligence have discovered and produced at the trial. The application was denied, and, judgment having been entered in favor of respondents, appeal was taken by the Detroit claimants from the order denying a new trial and from the judgment.

From a consideration of the issues involved on this appeal it is apparent that it is incumbent upon appellants to establish, in the first instance, that the court erred in finding that they were not the lawful heirs of the deceased, Johann Mueller, and, if no errors in this respect are found, there will be no occasion to enter upon a consideration of any of the questions involved in the validity of respondents' title and their right to maintai the action.

The inquiry as to the identity of the deceased was conducted in a most searching and thorough manner before the trial court. Every line of evidence was apparently exhausted which would throw any light upon the subject. The early history of the Detroit Mueller and of the deceased was investigated, and the characteristics and peculiarities of each individual brought out. The inquiry involved a careful examination and comparison in respect to age, size, weight, temperament, occupation, place of residence, statements in the way of admissions by the

Duluth Mueller, handwriting, photographs, and personal effects of the respective parties. Many witnesses were examined in Germany and Bohemia, and apparently every one was called to testify in the case who had any knowledge of either man which would elucidate the subject. It is unnecessary, and in fact impossible, in this review, to enter upon a minute discussion of the evidence, and it is sufficient to point out the main features which satisfy us that the findings of the trial court must be sustained.

1. It is undisputed that the Detroit Mueller was born in Gagenau, Baden, Germany, 1837; that he served for a time in the German army; left Germany, and went to Detroit, Michigan, in 1872, and that a while thereafter he was followed by his wife, and lived in Detroit until 1875, when he abandoned his family and disappeared. It is also undisputed that the brother of the Bohemian claimants, whose name was Johann Mueller; was born in Bohemia, a province of Austria, in the village of Jesau, in the year 1843, and that he left Bohemia in 1872 and was never heard from thereafter. The Duluth Mueller first became known in Minnesota when in 1893 he took a homestead in St. Louis county upon the land now in controversy, and from this time until his death he was known to several people in the vicinity of his homestead and in the city of Duluth, where he resided towards the close of his life. During this period he represented himself a single man, not only by oral declarations, but in taking out citizen's papers and in making application for his homestead. He spoke fluently the Bohemian as well as the German language. It is rather remarkable that there should be two individuals of the same name, speaking the German language, coming to America about the same time, and living for a number of years without establishing any communication with their relatives. Both were about the same size and weight, and apparently had some common characteristics. These facts were of sufficient importance to call upon the trial court to examine with great care all the evidence bearing upon the question of identity.

There was conflicting testimony upon many points, and a strong effort was made on the part of the Detroit claimants to show that the Duluth Mueller was identified as the Detroit Mueller by evidence tending to show that their characteristics were similar in the following respects: Color of hair and beard, general complexion, tattoo mark on

left arm, a mole or wart on forehead, ears pierced, contour of face, color of eyes, and imperfection in walk. On the other hand, there was strong evidence tending to show that there was a marked difference in their personal appearance in that the Detroit Mueller was of fair color, blonde beard and brown hair, and of erect carriage, while the Duluth Mueller was very dark, black hair and beard, and stooping bearing. There was some evidence tending to show that the signatures and handwriting of the two men were identical, but, on the other hand, there was strong evidence to the contrary. There was also some evidence tending to show that the Duluth Mueller had made some admissions that he had at one time lived in Michigan, and that he had a family there; but this testimony was attacked as untrustworthy. Photographs were exhibited of the Detroit man, taken when he was not more than thirty years of age, and of the Duluth man, taken when past fifty, a casual inspection of which do not show any resemblance to each other, but rather indicate two distinct men. The fact that the Duluth man lived more or less in seclusion, without communication with his people, and that he represented himself as single, is taken by appellants as evidence that he was attempting to conceal his identity for the purpose of keeping away from his family. There is a total absence of testimony on the part of any witness claiming to have known both men, the one while residing in Detroit and the other while living in Minnesota, and the evidence to establish identity is largely circumstantial and lacking in certainty. Notwithstanding the general features of similarity tending to support the theory that the men were one and the same, we are perfectly satisfied not only that appellants have failed to substantiate their case by a fair preponderance of the evidence, but that the evidence is decidedly to the contrary.

2. The claimants living in Bohemia did not appear as parties defendant in the action until after the taking of certain depositions relative to the claim of other defendants. During the progress of the trial an adjournment was taken to enable defendant Alois Mueller and his alleged coheirs to take depositions in Prague, Bohemia, and a stipulation was made by all parties to the action to that effect, which provided that the testimony of other witnesses than those mentioned therein might be taken on behalf of any of the defendants to the action. The parties then went to Prague, and took the testimony of witnesses bear-

ing upon the claim of Alois Mueller, from which, in the course of examination of the different witnesses called under the stipulation, developed the fact that those claimants were in no way related to the Duluth Mueller, and the case was abandoned as to them, but that a certain Johann Mueller had resided in Bohemia, and that defendants Andreas Mueller, his brother and sister, were his heirs, if he was dead. Upon returning to Minnesota, the same counsel who represented Alois Mueller made a petition on behalf of Andreas Mueller, brother and sister, to intervene as parties defendant in the action, and an order was made granting the prayer, whereupon the depositions which had been taken in Prague under the stipulations were offered in evidence, to which appellants objected upon the ground that they were not taken on behalf of the intervenors, who were not at the time parties to the action. The depositions were admitted, and the ruling is assigned as error.

Conceding the testimony of the witnesses taken under the stipulation tended to show that there was a Johann Mueller, a native of Bohemia, brother of Andreas, Anton, and their sister, who left Bohemia about the year 1872, and that he was identified as the Duluth Mueller, it does not appear that appellants were prejudiced by the admission of the testimony. If they were in any way limited in eliciting the truth either by cross-examination or by the calling of other witnesses, ample opportunity was given them at the time the depositions were offered, both by agreement of counsel and at the suggestion of the court to take further testimony in Bohemia, or elsewhere, for the purpose of fully meeting the effect of the depositions. Notwithstanding such offer and suggestion on the part of the court, appellants proceeded to trial, and made no effort to procure further testimony, and they are in no position to complain.

3. There are many assignments of error based upon the rulings of the court on the reception of evidence, and we have examined them in detail so far as they have bearing upon those issues now under review, and without special mention they may be disposed of by the statement that we are unable to find any reversible error in the court's rulings.

4. This brings us to a consideration of the newly discovered evidence. The trial of this action was commenced about the middle of June, 1902, and consumed several months. The decision for the plaintiffs having

been made on May 13, 1903, the motion for a new trial came on before the court on September 19, 1903.

At the hearing several affidavits were presented in support of the motion upon the ground of newly discovered evidence, but only four of them are necessary to notice. One is an affidavit made by Jacob Germain, subscribed and sworn to on September 17, 1903, in which he states he knew Johann Mueller in Detroit during the years of 1873, 1874, and 1875, and that together they traveled by boat to Marquette, Michigan, and that he did not afterwards see Mueller until 1892 or 1893, when he met him in Duluth, and afterwards saw him every year down to 1898, the last time being in the hospital in West Superior, just previous to his death; that during these years he had several conversations with Mueller, in which he mentioned his family and six children in Detroit; that he could not live with his wife, and that he expected to get his boys up on his claim, but requested affiant to make no mention of the fact that he had a family; that the photograph of the Duluth Mueller, exhibited on the trial, was a good likeness of the man he knew in Detroit; that he had no communication with Katharina Mueller.

The affidavit of Rudolph Mueller is to the effect that he had in charge the investigation of evidence pertaining to the action, and that on September 11, 1903, he for the first time discovered the existence of Jacob Germain, and that he was acquainted with the Detroit Mueller, and recognized him as the man who died at Duluth; that the meeting with Germain was accidental, and took place while affiant was looking for another party.

On the face of Germain's affidavit there are several things which, when taken in connection with the affidavit of Rudolph Mueller, may well have impressed the trial court with their incredibility. In the first place, Katharina Mueller's husband left Detroit without giving any reason, and in apparent secrecy, and was never heard from afterwards except once, when he appeared to be in Chicago, and once when the wife thought she saw him on the street in Detroit. It is somewhat improbable that, if Germain knew Mueller and his wife, and visited Detroit many times after 1875, that he did not know of Mueller's continued absence, and that he had no communication with the family. In the second place, it appears from Germain's affidavit that, although he lived in St. Louis county, and was acquainted with the prog-

ress of the trial, he never put himself in communication with the parties interested. If it was of so much importance that he was ready to make a declaration of his knowledge to Rudolph Mueller on September 11, it is rather remarkable that he did not make it known at an earlier date.

Another affidavit was made by Joseph Kollak, who swore that prior to December 14, 1903, he had no knowledge of the pendency of the action; that he knew Johann Mueller in Detroit in 1875, and recognized the photograph of the Duluth Mueller as a true likeness of the man he knew in Detroit; that he saw him in Duluth in 1889; that he talked with him about his family in Detroit; and that he knew Katharina, the wife, but never saw her after he left Detroit until she came to Duluth. Here again we have the peculiar incident of a man acquainted with Johann Mueller and his family while living in Detroit, met him several times after 1889 in Duluth, knew that he was separated from his family, and yet did not communicate with Mrs. Mueller upon meeting her in Duluth.

Turning again to the affidavit of Rudolph Mueller, it was stated that he discovered Joseph Kollak on September 15, 1903. The fourth affidavit was by Thomas McNally, who stated that prior to September 14, 1903, he had no knowledge of the pendency of the action; that he was acquainted with Johann Mueller in Detroit in 1874 and 1875, and that he knew that he left Detroit in 1875; that he met him in Duluth about 1888, and that he talked with him about his wife and children, who were in Detroit; that Mueller was registered at a hotel under an assumed name; that Mueller told him he first stopped off at Marquette when he left Detroit; that he spoke about his homestead claim, and McNally recognized the photograph as a good likeness of the Detroit Johann Mueller. Turning again to the affidavit of Rudolph Mueller, it appears that he discovered Thomas McNally on September 14, 1903, and became acquainted with the fact that he would testify as above stated.

The fact that these three important witnesses were found to testify in reference to such important features of the case, in regard to which there was an utter absence of testimony at the trial; the fact that they were discovered by the same person, and at about the same time, within very few days prior to the hearing of the motion for a new trial; and

the fact that their statements were similar in character, and tending to corroborate each other—may well have impressed the trial judge, and caused him to hesitate before accepting the statements therein contained as true. But, aside from the inherent and apparent lack of truthfulness of these affidavits, the evidence already in the case was so exhaustive upon the question of identity that the court, in the exercise of reasonable discretion, was well justified in refusing to reopen the case for the purpose of taking the additional evidence, and we are unable to discover wherein the court's discretion was abused.

Order and judgment affirmed.