STEPHEN F. BUENEMANN *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

August 21, 1884.

**Passenger Carrier—Duty of Railway Co. to Light Stations and Platforms.**—A railway carrier of passengers is bound to use every reasonable means to keep in a safe condition all portions of its platforms and approaches thereto, to which passengers, or those who have purchased tickets with a view to take passage on its cars, would naturally or ordinarily be likely to go. This includes the duty of properly lighting at night their depots, and approaches to and from their trains.

**Same—Company held Negligent.**—The evidence in this case considered, and *held* sufficient to justify a jury in finding that the defendant was negligent in not properly lighting its depot and approaches.

**New Trial—Successive Verdicts against Evidence.**—Where a trial court is of opinion that a verdict, although supported by some evidence, is against the weight of evidence, they may be justified in setting it aside, and submitting the case to a second jury, when they would not feel warranted in disturbing a second verdict, although rendered on the same evidence.

**Same — New Trial after Second Verdict Refused.**—Although the evidence in this case, in our opinion, tends to prove contributory negligence on the part of the plaintiff, yet it does not do so so clearly as to justify this court in holding, as a matter of law, that he was guilty of such negligence, especially as against the verdicts of two successive juries, and the action of the trial court in refusing to set aside the last verdict.

Appeal by defendant from a judgment of the district court for Ramsey county, where plaintiff had a verdict for $5,000, and a motion for a new trial was denied by *Wilkin* and *Brill,* JJ.

*R. B. Galusha, Bigelow, Flandrau & Squires,* and *J. Kling,* for appellant.

*C. K. Davis,* for respondent.

MITCHELL, J.   The defendant's depot at Alexandria, where the injury complained of occurred, was a wooden building 160 feet long by 24 feet wide, surrounded by a platform 16 feet wide on the north side and about 11 feet wide on the south side, and extending each way beyond the ends of the building about 48 feet, with steps at each end to go up and down.   The building was used as a "combination" depot, the east end being used as a freight-house, and the west 36 feet as an office and passengers' waiting-room.   The partition between the office and the waiting-room ran north and south, the waiting-room being on the west end of the building.   There were two small windows on the west end of the waiting-room, and one on the north side; also a window on the north side of the office.   The platform was elevated about four feet from the ground.   The railroad track was on the north side of the platform, and so close to it that when a train stopped there, passengers stepped from the cars to the platform, and *vice versa.*   The place where carriages and omnibuses stood to receive or deliver passengers was near the south-west corner of the platform. The night was dark, and there were no lights outside the building to light the platform or approaches.   The only lights inside the building were two kerosene lamps,—one on the counter in the waiting-room, and the other in the office near the operator's table.

On the night in question the plaintiff, who had never been there before, arrived as a passenger on defendant's train from St. Paul, about 8 o'clock in the evening, and after dark.   On alighting from the train he was guided by the omnibus agent with a lantern to the omnibus, stepped into it from the platform, and was driven to the hotel, and went to bed.   Desiring to return to St. Paul that same night, he was awakened between 1 and 2 o'clock in the morning, and driven in the omnibus to the depot, and guided by the omnibus agent with a lantern into the waiting-room.   We shall take as true plaintiff's own statement as to what subsequently occurred, as the jury were at liberty to accept it as true.   After a short time a passenger train arrived, and stopped at the platform.   On seeing this, plaintiff

went out for the purpose of entering the cars.    He saw two men with lanterns unloading baggage from the baggage-car on to the platform. He also saw a passenger coach standing opposite the waiting-room. This car was lighted within by three sperm candles, the light of which was visible through the car windows.    The only light on the platform was what little was shed through the depot windows from the two kerosene lamps within, and through the car windows from the sperm candles.    That this only imperfectly lighted a small part of the platform, and left the remainder in darkness, is very evident from the evidence.    Counsel for defendant are evidently indebted to their imagination for the "flood of light" of which they speak.    On going out, plaintiff, preferring to ride in the rear car of the train, and thinking there might be one behind the one standing opposite the waiting-room, walked towards the rear to see if there was another car, and having gone, as he says, far enough to see that there was none, was in the act of turning around, when he missed his step and fell off the platform upon the ground, having evidently, in the darkness, gone too near the edge.

The evidence was clearly sufficient to justify the jury in finding that defendant was guilty of negligence in not properly lighting its platform and approaches.    A railway carrier of passengers is bound to use all reasonable means to keep in a safe condition all portions of its platforms and approaches to which the public do or would naturally resort, and all portions of their station grounds reasonably near to the platforms where passengers, or those who have purchased tickets with a view to take passage on its cars, would naturally or ordinarily be likely to go.    McDonald v. Chicago & N. W. R. Co., 26 Iowa, 124.    This includes the duty of properly lighting at night their platform, and the approaches to and from their trains.

It is, however, strongly urged that plaintiff himself was negligent in walking in the dark towards the rear of the car on a platform which he knew was elevated from the ground, when he might have entered the lighted car which was in sight.    The preference to obtain a seat in the rear car, if there was another, was not an unnatural one. To go to look if there was another car was also natural.    It does not appear from the record, and cannot be determined, how far he went,

for a great deal of the evidence is entirely unintelligible, it being given with reference to a diagram which is not before us.     But it does not appear that he went farther than was necessary to see that there was not another coach to the rear, and hence, presumably, did not go any great distance beyond the rear of the coach in sight.   He was a stranger and was not familiar with the ground; but conceding, as we must, that he saw that it was dark, and knew that the platform was elevated, and, as counsel say, ended somewhere, yet might he not assume, when he saw that the company had left the platform unlighted, that they would not leave a passenger coach so near the end of the platform as to endanger the safety of passengers who might be seeking to approach either end of the car?   So far as we can arrive at a conclusion from the imperfect manner in which the evidence is brought before us, we admit we are personally strongly impressed with the idea that plaintiff was negligent, but by no means so clearly as to so hold as a matter of law against the verdicts of two juries, and the opinion of both of the learned judges who presided at the respective trials in the court below.   Although not necessarily controlling, yet the fact that two successive juries have, under proper instructions as to the law, exonerated the plaintiff from the charge of contributory negligence, is entitled to some weight as tending to show that, at least, there is reasonable ground for a difference of opinion on the question.

The suggestion of counsel that if the court below was justifiable in granting a new trial after the first trial, it was error to refuse it after the second, is not necessarily correct.   Where the trial court is of opinion that a verdict, although supported by some evidence, is against the great weight of the testimony, they may often be justified in granting a second trial and submitting the case to another jury, when they would not feel warranted in disturbing a second verdict on the same evidence.

Under all the circumstances, we do not feel at liberty to reverse the action of the trial court.

Judgment affirmed.