## L. A. DODGE and Another v. COUNTY OF MARTIN.[1]

November 22, 1912.

Nos. 17,882—(88).

**Judicial ditch — charge to jury prejudicial.**
On the trial of an appeal from the report of the viewers, in drainage pro-
ceedings, the instructions of the trial court are construed and *held* to have
in effect laid before the jury for consideration the determination of the
viewers in the matter of the assessment of benefits, and as so construed the
instructions were prejudicial to appellants.

**Appeal from viewers' report.**
Such appeals bring the matter of damages and benefits before the court
for trial *de novo,* and the amount awarded by the viewers is not a proper
matter for consideration by the jury.

In proceedings in the district court for Martin county to assess the
benefits arising from the construction of Judicial Ditch No. 14, L. A.
Dodge and A. E. Jones demanded a jury trial to assess the benefits
resulting to their land. The appeal was heard before Quinn, J., and
a jury which assessed the benefits in the sum of $2,135, the exact
amount fixed by the viewers in the proceedings. From an order
denying their motion for a new trial, they appealed. Reversed and
new trial granted.

*J. E. Haycraft,* for appellants.
*Albert R. Allen,* for respondent.

BROWN, J.

In judicial ditch proceedings pending in the court below, appel-
lants, landowners whose land was assessed for benefits to result from
the construction of the drain, appealed from the assessment as made
by the viewers and approved by the court, and demanded a trial of
the issue by a jury, as provided for by Laws 1905, p. 317, c. 230.
The appeal came on for trial, and the sole issue litigated was the

[1] Reported in 138 N. W. 675.

question of benefits to appellants' land. The jury returned a verdict fixing the benefit at the sum of $2,135; the same being the exact amount fixed by the viewers. A new trial was denied, from which order this appeal was taken.

The motion for a new trial was founded in the main upon alleged erroneous instructions to the jury; and whether the instructions complained of were prejudicial to appellants presents the only question on this appeal.

The court in its charge to the jury referred to the statutes on the subject of drainage of wet and overflowed lands, and to the proceedings necessary to the completion of a drainage project. Among other things the court said that one of the essential steps was the ascertainment and the equalization of the amount each tract of land should bear toward the expense of constructing the drain; and to that end that the court was required at a certain stage of the proceedings to appoint viewers, whose duty it was to examine the affected land and assess the damages or benefits necessarily to result from the improvement. The jury was informed that, in compliance with the statutes, viewers had been appointed in this proceeding for the purpose stated, and that the viewers so appointed "went out and assessed the benefits which in their judgment would accrue to each of the pieces of land affected. * * * Those men qualified, went out and performed their duties, made their report to the court, as the law requires them to do, of what, in their judgment, were the benefits which each tract of land would receive; the amount that each tract would be benefited by the construction of such ditch system." The court further stated that upon the presentation of the viewers' report it became the duty of the court to examine the same and to approve, or reject or modify, the allowances made by the viewers, as the facts presented justified or demanded. In this connection the court further said: "Now, when the court makes its order, it is what is known as the final order, and it fixes the amount of benefits which it appears to the court is reasonable and right under all circumstances, as shown by the proofs offered." The court then stated that the law grants to persons affected by the ditch, and where lands are assessed for benefits, the right to demand a jury trial, and to thus review the

action of the viewers and the court. That in the present case appellants were within their rights in appealing from the final order of the court approving the action of the viewers, and that the jury should determine the merits of the issue from the evidence presented to them. Following this the court again referred to the determination by the viewers in the following language: "I might say, so that you may clearly understand, that the viewers and the court should undertake * * * to assess the benefits so as to equalize the payments among the different lands that are affected by the ditch, so that each one will pay, as near as can be, in accordance with their actual benefits, no more and no less. That is the purpose of the law. That is why the viewers go out there, one of the principal reasons why the viewers are sent out there, why the court reviews it afterwards, and why finally, if a man asks for it, a jury is empanelled for the purpose of assessing benefits, to get it as near right, and to get it as near in accordance with what the actual benefits will be, as possible." The charge of the court in other respects clearly stated to the jury the rules of law controlling their consideration of the case, and was complete and unobjectionable.

An appeal of this character brings to the district court for trial de novo, the issue of benefits or damages, as the case may be, and should be there determined without reference to the conclusion reached by the viewers. The object of the law in granting the right of appeal is to afford the appellant the right to the independent judgment of a jury, uninfluenced by the result from which the appeal was taken. If in any such case the jury by the charge of the court, or otherwise, is led to the conclusion that consideration and respect should be given the assessment made by the viewers, the appellant is deprived of his right to the separate opinion of the jury, and his appeal becomes fruitless. In the case at bar we cannot escape the conclusion that the instructions complained of tended strongly to impress upon the jury that view of the case. That it had such effect is made apparent by the result. The verdict concurred exactly with the report of the viewers.

We are not to be understood as intimating that the court below intended to influence the jury in the suggested direction. All that

the court said to them was abstractly correct, but it was unnecessary, and its natural tendency was to create an erroneous impression on the minds of the jury prejudicial to appellants. The viewers' report, including the amounts of benefits thereby awarded, was before the jury, not as evidence bearing upon the question of benefits, but as a part of the proceedings, and the jury could not properly consider the same upon the issue to be by them decided. Northern Pacific Ry. Co. v. Duncan, 87 Minn. 91, 91 N. W. 271. A reference to that report by counsel would have constituted error. Pierce v. Brennan, 88 Minn. 50, 92 N. W. 507; McKenzie v. Banks, 94 Minn. 496, 103 N. W. 497. And if such reference by counsel would constitute error, for a stronger reason would instructions of the court, in language naturally tending to impress upon the minds of the jury the importance of the viewers' determination of the subject matter of the litigation, constitute error. While, as already suggested, the instructions complained of stated correct propositions of law, and were not in fact intended to influence the jury, yet it is clear that such was the effect. The charge of the court must be construed from the standpoint of the jury, and the impression likely to be created by what the court said to them. Mailand v. Mailand, 83 Minn. 453, 86 N. W. 445. The natural effect of the charge in this case was to lay before the jury the conclusion reached by the viewers, leaving with them the impression that such report was proper for consideration in reaching their verdict.

Our conclusion, therefore, is that in this the court erred to the prejudice of appellants.

Order reversed and new trial granted.