## WILLIAM E. ROONEY v. COUNTY OF STEARNS and Others.[1]

June 25, 1915.

Nos. 19,250—(178).

**Drain — branch drains.**

1. In this county drainage proceeding, the board of county commissioners was justified, upon the record, in eliminating certain branch ditches.

[1] Reported in 153 N. W. 858.

**Verdict — evidence.**

2. The jury on appeal was warranted in finding that appellant suffered no damages on account of loss of the water supply afforded by the lake to be drained.

**Trial in district court — findings of viewers.**

3. Upon a trial in the district court of an appeal in a drainage proceeding, care should be taken that the findings of the viewers upon the subject of damages and benefits do not reach the jury.

**Assessment of benefits.**

4. It is *held* that the jury adopted a wrong and inequitable method as a basis for assessing the benefits to accrue to appellant from added acreage from the lake bed to be drained.

**Meandered lake.**

5. Under section 5528, G. S. 1913, the jury is required to ascertain the amount and value of the land added to a shore owner by the drainage of a meandered lake, but the jury should not include therein dry and usable land lying between the government meander line and the present ordinary high water mark of the lake.

William E. Rooney appealed to the district court for Stearns county from an order of the county board for that county, establishing a public ditch designated as No. 32 and confirming the reports of the engineer and viewers, on the ground that the benefits determined by the county board were in excess of the actual benefit to his land and that no damages had been allowed him on account of the construction of the ditch. The appeal was heard before Roeser, J., and a jury which returned a verdict giving the number of acres which each parcel would receive from the lake bed and the amount of benefits by reason of the added land. From an order denying his motion for a new trial, William E. Rooney appealed. Reversed.

*Donohue & Stephens,* for appellant.

*R. B. Brower* and *Paul Ahles,* for respondents.

HOLT, J.

This appeal is in a county drainage proceeding. The appellant complains because no damages were allowed him and because, in estimating his benefits, the jury, as a basis therefor, adopted a wrong and inequitable method of apportioning, among the riparian

130 M.—12.

owners of Sand lake, the 372 acres reclaimed by its drainage. Sand lake is a meandered shallow lake, the deepest part, at a low stage of water, being about two feet. Its length is about 1½ miles, and greatest width about ½ mile. It has now no regular inlet or outlet. In very high water it flows northeast into a bog through a channel which years ago might have been considered a natural outlet. Appellant owns two farms bordering on the lake. One, called the west farm, comprises the northwest quarter of the southeast quarter and lot 2 in section 34, and one, called the east farm, consists of the northwest quarter of the northeast quarter and lot 2 in section 35, both in town 125, range 35, Stearns county. The jury found, under the plan of division adopted, that the west farm would receive 57 acres of the lake bed, and the east farm 18 acres. The benefits for the added land to the west farm were estimated at $45 per acre, and to the east farm at about $40. About $300 additional benefits to land of appellant adjacent to the lake bed were also assessed against him.

A large number of errors are assigned, but few need be noticed.

The total length of the main ditch project is about 22 miles. The board of county commissioners eliminated 4½ miles of branch ditches. Appellant contends that this was such a radical departure from the drainage petitioned for that, under Lager v. County of Sibley, 100 Minn. 85, 110 N. W. 355, and Jurries v. Virgens, 104 Minn. 71, 116 N. W. 109, the whole proceeding must fall. To this we cannot assent. The law has been amended so that the elimination of branches may be made when shown, to the satisfaction of the board, to be an improvement of the proposed drainage project. Section 5531, G. S. 1913. We think the county board, upon this record, was within its rights in omitting the branch ditches.

Appellant considered himself entitled to damages, because the drainage of the lake deprives his pastures of water. It is enough to say that the quality of the water in the lake and the boggy approach thereto was such that the jury cannot be said to have gone astray in awarding no damages for the loss of water supply.

Since, upon appeal to the district court, there is a trial *de novo,* as to the assessment of damages and benefits, care should be taken that the previous conclusion of the viewers upon the subject does

not come before the jury to the prejudice of either party to the appeal. Particularly objectionable is information of the result reached by the viewers, when the jury's attention has been directed to the fact that the viewers had an opportunity to see the lands to be affected, an advantage not accorded the jury. Dodge v. County of Martin, 119 Minn. 392, 138 N. W. 675; Cunningham v. County of Big Stone, 122 Minn. 392, 142 N. W. 802. Appellant appears to have some foundation for complaint in this respect, but, since a new trial must be had upon more substantial ground, no more need be said upon this point.

It is perhaps unfortunate that, in drainage projects involving a meandered lake, the law does not provide, in the proceeding itself, for a division of the bed of the lake among the different shore owners. As it now is, after a person has paid an assessment on the basis of having acquired a large acreage of land from the reclaimed lake bed, he may find that in an action brought afterwards for partition, a great part thereof goes to other parties. Under existing provisions of the law, the assessment of benefits in drainage proceedings involving a lake bed, cannot be estimated on the exact acreage which each shore owner will eventually acquire. But the aim should be to approximate what will finally be owned by each. Hence, the viewers and the jury, in this case, were to base benefits for added land upon what portion thereof would in all probability be allotted to appellant, were a division of the lake bed had in a partition suit, with all interested parties before the court. We are satisfied that the method adopted by the jury in this trial cannot be used and bring about an equitable and just division of Sand lake among those whose lands abut thereon.

The court left the jury to find which one of three methods might be the most practical and just division of this lake bed—the one so adopted to serve as a basis for estimating appellant's benefits. One of the methods was to consider the deepest point as the common center and draw lines from this center to the boundary line of each shore owner as it struck the ordinary high water mark—that is the meander line. Another was, to consider whether the receding waters would divide the lake and leave the lake bed with two common

centers. And a third was, whether the lake, being long and somewhat irregular, should be treated as a stream with a division line passing from end to end, keeping near the middle. In this connection this instruction was given: "You may adopt such method as you think under the evidence most practicable and just, bearing in mind that the courts favor the division into triangles at a common center like the division of a pie, if that plan can be followed and make a practicable and just division."

While there may be some evidence warranting a finding that the water receding would leave two common centers from which by triangulation the lake bed might be equitably partitioned, the jury did not go astray in rejecting that method. The lake is so uniformly shallow that there seems to be little occasion for attempting to find two common centers. When the water entirely disappeared at the narrow neck, no doubt no water of any usable quantity would be found either at the west end or in the larger east end. We also observe that the lake is so long and irregular in shore line that a distribution of the bed by the "pie cutting" method will result in palpable injustice. The best demonstration of this is an inspection of respondent's Exhibit M M. It shows the method adopted by the jury. [See opposite page.]

We are of the opinion that this lake is of such shape and character that the method of apportioning the bed contended for by appellant, and as illustrated in his Exhibit 1 should have been followed substantially. [See page 182.]

We do not think the absence of an actual flowing stream, produced by an inlet and outlet, renders improper the application of the rule that this lake bed should be divided like the bed of a running stream. It is clear enough from former decisions involving the ownership of lake beds, that no hard and fast rule can be applied. Each case must in a large measure depend on the shape and character of the lake and the shore line. Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L.R.A. 670, 38 Am. St. 541; Hanson v. Rice, 88 Minn. 273, 92 N. W. 982; Scheifert v. Briegel, 90 Minn. 125, 96 N. W. 44, 63 L.R.A. 296, 101 Am. St. 399; Burton v. Isaacson, 122 Minn. 483, 142 N. W. 925. It seems clear to us that

Respondent's Exhibit MM

Appellant's. Exhibit 1

the one adopted by the jury produces gross inequality between the owners of lot 2, in section 34, and lot 4 in section 35. The latter owner having a longer shore line than appellant, the owner of lot 2 receives virtually nothing of the lake bed, while 57 acres thereof is tentatively given to appellant as a basis for assessing benefits. Appellant's assessment for benefits may amount to paying almost full value for 57 acres with no assurance that he will not be deprived of a large part thereof by the owner of lot 4 in section 35, when legal partition of the lake bed is made. The observation in Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. ed. 428, quoted with approval in Scheifert v. Briegel, supra, is applicable to Sand lake, viz.: "Where a lake is very long in comparison with its width, the method applied to rivers and streams would probably be the most suitable for adjusting riparian rights in the lake bottom along its sides and the use of converging lines would only be required at its two ends." Farnham, Waters and Water Rights, § 843.

Some claim is made by appellant that the jury included in the acreage added to appellant's east farm, by the drainage of the lake, 15 or 18 acres dry land upon which a grove of large trees were growing, this dry land being between the government meander line and the present shore of the lake. We think dry and usable land between the government meander line and the present ordinary high water mark is not, within the contemplation of section 5528, G. S. 1913, to be included by the jury in the acreage added to the riparian owner's possession by the drainage of a meandered lake, and its value the jury is not to determine. But it does not appear that the jury did include land above present high water mark in the added acreage.

The order is reversed.