JAMES P. QUINN v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

February 13, 1925.

No. 24,357.

**Verdict for $16,000, in favor of switchman permanently incapacitated for his employment, sustained.**

This court will not set aside a verdict of $16,000, on the ground that it is so excessive as to indicate passion and prejudice on the part of the jury, where the plaintiff was a railroad switchman, 39 years old, earning $175 a month, and suffered a serious injury to his left arm and hand which, in the opinion of his medical witnesses, was permanent in its nature and will always disable him from following his former occupation.

*Headnote 1. See Damages, 17 C. J. p. 1101, § 425.

Action for $35,000 transferred to the district court for Ramsey county. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict for $21,000. Defendant's motion for a new trial was denied on condition plaintiff consented to a reduction of the verdict to $16,000. From the order denying a new trial, defendant appealed. Affirmed.

*F. W. Root, C. O. Newcomb* and *A. C. Erdall,* for appellant.

*Tom Davis, Ernest A. Michel* and *McMeekin, Quinn & Swan,* for respondent.

LEES, C.

Action for damages for personal injuries. Plaintiff obtained a verdict for $21,000, consented to a reduction of $5,000, and defend-

[1]Reported in 202 N. W. 275.

ant has appealed from an order denying its motion for a new trial. The sole question is whether the verdict as reduced is so excessive as to require a new trial unless plaintiff consents to a further reduction.

At the time of his injury, plaintiff was a switchman, 39 years old and earning $175 a month. While endeavoring to adjust a defective lock block in the coupler of a freight car, his left arm was caught between the couplers and badly crushed. The defective lock block made it necessary for him to go between the cars to make the coupling. It is conceded that defendant had failed to comply with the requirements of the Federal Safety Appliance Act, and there is no question about plaintiff's right of recovery.

Immediately after the accident, plaintiff was taken to a hospital for treatment. His left thumb was amputated, and then an attempt was made to set the bones in the forearm, both of which were broken. Thirteen days later an incision was made in the forearm and the ends of one of the broken bones were fastened together with a screw plate. A little later there was a third operation, and the ends of the other bone were fastened together with kangaroo tendons. Before he was injured, plaintiff had the normal use of his left arm and hand, except a slight stiffness in the little finger from a previous injury.

Plaintiff called two physicians as witnesses, one of whom testified that plaintiff's ability to bend the forearm had been substantially impaired; that he had lost practically all power of pronation and supination; that there was hardly any movement at the wrist joint; that the fingers of the left hand could not be fully closed; that the muscles between the elbow and shoulder were shrunken; that there was an unnatural swelling in the forearm; and that the hand and lower half of the forearm were cold and had an abnormal color. This testimony was based on an examination made about 4 months before the trial. A subsequent examination, made immediately before the trial, disclosed conditions but little changed, although the movement of the fingers was better, the muscles of the arm were somewhat stronger, and a wider range of movement at the elbow was possible. The testimony of the other physician was even more

favorable to the plaintiff. Both were of the opinion that plaintiff would not regain the use of the injured arm sufficiently to enable him to do the work of a switchman, or to perform hard manual labor.

Defendant's witnesses included 3 men who had lost the thumb and one or more fingers of the hand and were thereafter employed as switchmen and in general railroad work for many years. The medical evidence in its behalf was given by 2 physicians who had examined plaintiff and who testified that he had some muscular limitation of motion in the left shoulder; that the muscles of the forearm were somewhat shrunken from disuse; that there was some bowing of the arm; that he had about one-third of the normal power of supination and pronation of the left hand; and that there had been a substantial reduction in the normal power of flexing the fingers. They were of the opinion that, with massage, plaintiff's disability would not continue for more than a year after the trial, and that he would then be able to return to his former occupation.

Further statement of the evidence is unnecessary. If the jury believed plaintiff's medical witnesses, they were warranted in finding that plaintiff sustained an injury which will permanently prevent him from returning to his former occupation and that, although he can make some use of the injured arm and hand, their usefulness has been greatly impaired. A trial judge of long experience thought the verdict was excessive and gave the plaintiff the option of accepting a reduction or taking a new trial. The rule by which we are governed in such cases as this is well stated in Gibson v. C. G. W. R. Co. 117 Minn. 143, 134 N. W. 516, 38 L. R. A. (N. S.) 184, Ann. Cas. 1913C, 1263, and Ott v. Tri-State T. & T. Co. 127 Minn. 373, 149 N. W. 544. In determining whether a verdict is so excessive that a new trial should be granted, much responsibility rests on the trial judge. He is called upon to exercise a practical and sound discretion. This court does not readily substitute its judgment for his, for he is in a far better position to come to the right conclusion than we are. Properly enough, we defer to his judgment and do not interfere unless it is fairly evident that he

failed to keep the jury within the bounds of reason and common sense.

In recent years there has been a noticeable increase in the size of verdicts in personal injury cases. The courts approve of verdicts today which would have been unhesitatingly set aside as excessive 10 or 15 years ago. Measured in money, the earning capacity of most men has increased; measured by its purchasing power, the value of a dollar has decreased. No immediate change in the situation is in sight. It is only right that these well-known facts should be taken into consideration. Although the reduced verdict seems large to us, we cannot say that it is so excessive that the trial judge failed to exercise sound judicial discretion in refusing to set it aside or in failing to make a greater reduction.

Order affirmed.