NORTHERN STATES POWER COMPANY v. F. H. BARNARD AND OTHERS.[1]

November 25, 1932.

No. 29,029.

[1]Reported in 245 N. W. 609.

*J. M. Freeman, G. P. Smith,* and *Lee & Lee,* for appellant.
*Daly & Barnard,* for respondents.

WILSON, C. J.

Appellant appealed from an order denying its motion for a new trial.

Appellant instituted condemnation proceedings for easements over certain lands for transmission line purposes. Plaintiff owned a 200-acre farm having buildings valued at $12,000. It is located upon the bluff of the Minnesota river valley and has some first-class land on the highland where the buildings are located and some stony and timber land on the bluffs and on the lowland. It is a good average Minnesota farm. In the proceedings appellant acquired a diagonal right of way over this farm, 2,950 feet in length. It involved the right to erect and maintain on this farm five structures of the so-called "H" construction type, some 500 feet apart, at locations specified on the farm; each of the five structures to consist of two poles set 13 feet apart and surmounted by a metal cross-arm 26 feet in length to carry the conductors of copper cables. The

two poles are set at right angles with the cables, which run diagonally across the farm. The easement carries the right to enter upon the premises along the route of the transmission line on a strip not more than 26 feet in width for the purpose of "erecting, operating, and maintaining said transmission line, and for the purpose of repairing, replacing, patrolling, and improving the same, with the right to cut, trim, and remove all trees within a strip of 45 feet in width on each side of the center line" of the transmission line.

The appraisers awarded respondent damages in the sum of $1,775. Appellant appealed to the district court, claiming that the damages did not exceed $500. The jury awarded $3,500. On appellant's motion such verdict was vacated by the court as excessive and a new trial was granted, wherein the present verdict of $3,200 was rendered. Appellant now claims the second verdict of $3,200 to be excessive. Respondent called 11 witnesses whose average testimony fixed the damages at about $3,590. This is met by five witnesses called by appellant whose average testimony fixed the damages at about $500.

█ Our problem is a troublesome one. It is the peculiar province of the jury to determine the amount of the damages. The law does not permit a court, appellate or otherwise, to substitute its own judgment for that of the jury although the verdict may be considerably more (or less) than in the judgment of the court it ought to have been. We would have been better satisfied in this case if the amount had been less. At first glance it seems fanciful. Our statute authorizes the granting of a new trial because of excessive damages appearing to have been given under the influence of passion or prejudice. In Thurston v. Martin, 5 Mason, 497, 499, Mr. Justice Story in discussing excessive damages said:

"It is one thing for a court to administer its own measure of damages in a case properly before it, and quite another thing to set aside the verdict of a jury, merely because it exceeds that measure. * * * Upon a mere matter of damages, where different minds might, and probably would, arrive at different results, and nothing, inconsistent with an honest exercise of judgment, appears,

I, for one, should be disposed to leave the verdict, as the jury found it."

Time has not changed the rule. Where the amount of the verdict does not depend upon computation, the judgment of the jury and not the opinion of the court is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by passion or prejudice. In this case the record discloses nothing to indicate either passion or prejudice unless it be the amount of the verdict alone. In Quinn v. C. M. & St. P. Ry. Co. 162 Minn. 87, 89, 202 N. W. 275, 276, 46 A. L. R. 1228, it is said:

"In determining whether a verdict is so excessive that a new trial should be granted, much responsibility rests on the trial judge. He is called upon to exercise a practical and sound discretion. This court does not readily substitute its judgment for his, for he is in a far better position to come to the right conclusion than we are. Properly enough, we defer to his judgment and do not interfere unless it is fairly evident that he failed to keep the jury within the bounds of reason and common sense."

In Carter v. Duluth Yellow Cab Co. 170 Minn. 250, 255, 212 N. W. 413, 415, it is said:

"The learned trial court has approved the verdict, and our limitations command that we be guided by the general rule applicable to other discretionary orders."

The vital question is as to the difference in the reasonable market value of this farm before and after the taking. The peculiar make-up and location of the transmission line gives opportunity for difference in opinion as to how and the extent to which it may affect the market value of the farm. The appraisers appointed by the court were presumably impartial, and perhaps their award was a just one. This verdict is $1,425 more. Men may readily differ as to what the amount should be. The easement carries inconvenience in the operation of this farm. This inconvenience is to be forever. There is nothing speculative in the inconvenience that is to follow and which appellant now attempts to minimize. The

actual amount of land taken is small. While the easement does not result in a complete separation of the farm as a railroad or a highway would, it is a substantial interference to which the owner of the farm must yield. It destroys the symmetry of the field, is an obstruction, and necessitates much turning and maneuvering. It unquestionably affects the salability of the farm. How much? Who knows? We do not know of persons better qualified to determine the amount than the witnesses and jurors in this case.

The verdict is not based only in the fanciful opinion of men who are inexperienced, as claimed by appellant. True, most of the witnesses are not experienced with a similar transmission line and its structures. But they are well qualified to speak of value, and that is the question to which they direct their testimony. They are men who are familiar with the value of farms and farm operations. They disclose qualifications to testify as to the matter involved. No objection was made to their qualifications so to testify. The attack was made on cross-examination, and is made now, to minimize their conclusions. These witnesses disclosed the basis of their conclusions, and the jury apparently believed them.

By little effort the owner could extend his apparently permanent pasture to include the five or six acres of good land including four of the five structures. But an owner of a farm is not required by law or otherwise to yield to the demands of others in how his farm shall be arranged, nor should he be relegated in these times of modern farming to the adoption of a permanent pasture on good farm lands.

Theoretically a public service corporation is given the right of eminent domain in the interests of the public, but often practically much in part for private benefit. The landowner is entitled to just compensation; no more. It may be that expensive easements are inimical to the desired development of appellant's business, especially in the rural sections of the state. But it was appellant who took this matter to a jury, as it had a right to do. "The duty of the trial court is to keep the jury within the bounds of reason; the duty of the appellate court is to keep the trial court within the bounds

of judicial discretion." 5 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7136.

In order for us to interfere, the damages must be so large that, after making just allowance for difference of opinion among fair-minded men, they cannot be accounted for except upon the theory that in the particular case the proper fair-mindedness was wanting. Ott v. Tri-State T. & T. Co. 127 Minn. 373, 149 N. W. 544. It must not only appear that the verdict is excessive, but also that it is the result of passion or prejudice.

The books are full of cases involving the claim of excessive damages in personal injury cases. Therein much must be left to the discretion of the jury for the simple reason that there is no rule of law under which the damages may be approved. Under such circumstances the principles above stated have peculiar application. The court exercises supervision of the verdicts in personal injury cases because of the absence of such a rule and because the proof of such damages is necessarily indefinite.

But in cases of this character the law provides a rule by which damages may be proved. The law provides that the value of the property involved before and after the taking may be proved by the opinion of witnesses. Such evidence of course is not always satisfactory. It is a mere estimate. But there is nothing better obtainable. That is the only kind of evidence that is available. Both parties presented the kind of evidence which the law approves. It is not, however, binding upon the jury. It is largely advisory. Its weakness requires it to be received and considered cautiously. The jury is the judge of the credibility of such witnesses. The value of such opinions depends greatly upon their reasonableness. In this case the members of the jury could grasp the full situation, and the facts largely speak for themselves. There could have been no misunderstanding of the facts by the jury. Persons may differ as to the conclusions to be drawn. The jury draws its own conclusion, aided by all the witnesses who gave opinions as to value. It cannot be said in this case that the evidence does not sustain the verdict; it does. It is of such character that the jury were at lib-

erty to give it credence. It should be kept in mind that the venom of a large verdict in this particular kind of a case in no way permeates the question of liability, as is often feared in alleged excessive verdicts. Liability is here conceded. The sole question is the amount of the damages. That cannot be determined to a mathematical certainty. The amount of this verdict is such as to cause us to hesitate. The fact that there have been two jury trials with substantially the same result is of importance. This must be taken into consideration by those carrying the responsibility for extended, prolonged, or expensive litigation. Twenty-four jurors have agreed upon substantially the same amount. A large number of witnesses were apparently honest in their beliefs and opinions in testifying as above stated. The judge in the second trial has approved the verdict. Were this verdict here after but one trial, we probably would not affirm it. But courts seldom grant a third trial on the ground of excessive damages.

Mr. Justice Mitchell in Buenemann v. St. P. M. & M. Ry. Co. 32 Minn. 390, 393, 20 N. W. 379, 381, stated:

"Where the trial court is of opinion that a verdict, although supported by some evidence, is against the great weight of the testimony, they may often be justified in granting a second trial and submitting the case to another jury, when they would not feel warranted in disturbing a second verdict on the same evidence."

In Peterson v. Western Union Tel. Co. 65 Minn. 18, 24, 67 N. W. 646, 647, 33 L. R. A. 302, Mr. Chief Justice Start comprehensibly stated the rule:

"The trial court seems to have regarded the damages so excessive as to justify a new trial, except for the fact that this is the second verdict in the case, and that one reason for setting aside the former verdict was that the damages were excessive. As a rule, the court will not set aside a second verdict on account of excessive damages, but where, as in this case, the verdict is controlled by no reason, supported by no justice, and is manifestly the result of passion and prejudice, it is the duty of the court to set aside, no matter how

many similar verdicts may have been previously returned in the case."

The books sometimes say that a third trial is seldom granted on the ground of excessive damages, and a fourth trial never. In Van Doren v. Wright, 65 Minn. 80, 67 N. W. 668, 68 N. W. 22, it was held:

"A court might be justified, in the exercise of its discretion, in granting a second trial, on the ground that the verdict was against the evidence, when it would not be justified in granting a third or subsequent trial on the same ground."

It was also stated in Park v. Electric Thermostat Co. 75 Minn. 349, 350, 77 N. W. 988:

"The trial judge might be justified in the exercise of his discretion in granting one new trial on the merits when to grant a second trial on the same evidence would be an abuse of discretion."

In Bathke v. Krassin, 78 Minn. 272, 274, 80 N. W. 950, 951, the rule is stated:

"While courts ought to be very conservative in setting aside verdicts—particularly a second verdict—as excessive where the first one was vacated for the same cause, yet, where the amount of a verdict is manifestly so excessive as to warrant no other reasonable conclusion except that it was the result of passion or prejudice, it is the duty of the court to set it aside, no matter how many similar verdicts may have been vacated for the same cause, for justice must be administered according to reason, not passion."

In Fischer v. Sperl, 100 Minn. 198, 200, 110 N. W. 853, 854, this language is used:

"This court has not laid down any inflexible rule as to how many verdicts may be set aside and new trials granted by the trial court on substantially the same evidence. The rule which we deduce from our decisions is that a trial judge may be justified in granting one new trial on the merits, when it would be an abuse of his discretion to set aside a second verdict and grant a second new trial on practically the same evidence. The granting of the first new

trial does not end his discretion in the premises. Nevertheless the fact that one new trial has been granted on the merits is an important factor in the determination of a motion to set aside a second verdict and grant another new trial on the same evidence, and the discretion should be exercised with caution, for there must be an end of litigation."

Mr. Chief Justice Start, in Halness v. Anderson, 110 Minn. 204, 124 N. W. 830, stated:

"The trial judge ought not to grant a second new trial for excessive damages, unless they are so excessive as unmistakably to indicate that the verdict must have been the result of passion or prejudice."

In Cox v. C. G. W. R. Co. 176 Minn. 437, 438, 223 N. W. 675, 676, Mr. Justice Olsen wrote:

"We follow the rule here that where one verdict has been set aside as excessive this court will exercise great caution in setting aside or reducing a second verdict as excessive."

All things considered, we are of the opinion that we should not interfere with this second verdict.

■ Appellant attacks the competency of the appraisers as witnesses on the trial. Respondent called two of them. We know of no reason to disqualify them. Indeed, we see no reason why their official connection with the condemnation proceedings should disqualify them as witnesses on the appeal as to damages. The two appraisers in this action put the value, on the witness stand, at such figures as to result in damages greater than officially reported. For undisclosed reasons appellant's counsel did not attempt to impeach them by their official figures, as might have been done. That was their privilege. We hold that such appraisers in such proceedings may be called on appeal as witnesses by either party. In re Judicial Ditch No. 2, 144 Minn. 257, 175 N. W. 102; In re County Ditch No. 33, 150 Minn. 69, 184 N. W. 374.

Affirmed.

STONE, J. (dissenting).

To me this seems a clear case for reversal on the ground of passion and prejudice.

OLSEN, J. took no part.

