STATE, BY MILES LORD, ATTORNEY GENERAL, v.
AXEL R. PEARSON AND OTHERS.
COFFMAN REALTY COMPANY, APPELLANT.

110 N. W. (2d) 206.

July 28, 1961—No. 38,072.

*E. E. Ranta, A. H. Michals,* and *Robert L. Madsen,* for appellant.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Jerome F. Chapman,* Special Assistant Attorney General, for respondent.

NELSON, JUSTICE.

The State of Minnesota by its attorney general commenced this condemnation proceeding against the Coffman Realty Company and several other respondents to acquire certain lands for trunk highway purposes. Court-appointed commissioners filed a report awarding damages of $32,500 to said company, and appeals were taken therefrom to the district court both by the state and the company.

After a trial and a jury verdict of $13,000, the company moved for a new trial upon the following grounds:

"1. The Court erred in allowing the petitioner to cross-examine the Court appointed Commissioner Philip C. Smaby, and such cross examination is contrary to law.

"2. The verdict rendered is not justified by the evidence, and the damages rendered therein are insufficient."

On appeal to this court from a denial of that motion, Coffman Realty Company makes the following assignment of errors:

"1. The trial court erred in permitting cross examination of Philip C. Smaby, one of the commissioners, on the reasons for the award after he testified only as to the amount of the award * * *.

"2. The court erred in denying appellant's motion for a new trial based on the prejudice suffered by allowing the cross examination of Mr. Smaby and on the insufficiency of the evidence to support the verdict."

The trunk highway section involved here was first opened to public travel September 15, 1959, approximately 6 months after the date of the taking in this proceeding. The area of the tract owned by appellant was 6.70 acres. After the taking of 1.32 acres from the west side of it, the area was reduced to 5.38 acres. The area taken consisted of a long, narrow, triangular-shaped strip with its long dimension running north and south and the point thereof pointing approximately due north, its dimensions being about 95 feet along West 82nd Street and 890 feet north and south.

At the trial in district court, appellant presented two witnesses who testified to the amount of damage caused by the taking. William D.

Coffman, president of Coffman Realty Company, testified that the highest and best use of his property was for commercial use. He stated that the value of the property before the taking was $116,363.85 and that the value of the 5.38 acres remaining immediately after the taking was $69,038.85, with resultant damages of $47,325. It was brought out on cross-examination that one of his proposals for apartment buildings was a use for which the land had not been zoned at the time of the taking.

Philip C. Smaby, president of Bermel-Smaby Realty, Inc., and a licensed real estate broker and member of the Minneapolis Board of Realtors, testified as to his experience in doing appraisal work for landowners, corporations, and private individuals. He had viewed the premises here as a court-appointed commissioner, and on direct examination he testified that the award represented the damage for the land taken and the injury involved to the remaining property. On cross-examination he testified that the best use that the property could be put to was as commercial property; that in his opinion the damages were in the sum of $32,500; that the value immediately prior to the taking was $82,000 and that the value immediately after the taking was $49,500; that the owner lost a filling station site plus the loss of some commercial land. He also testified that immediately after the taking the property was still commercially zoned which would make it available for a filling station on the property not taken.

Howard Lawrence, a real estate appraiser by profession, testified for the state that the highest and best use of the property before taking as well as after taking was for purposes compatible with the commercial zoning in effect. He testified that he could visualize a service station at the 82nd Street corner and other commercial uses before the taking and the same uses were the same highest and best uses after the taking as before the taking. He stated that the taking did not result in any decrease in value of the remaining commercially zoned property on a square foot basis; that the value of the property before the taking was $57,000, based upon a value of $8,500 an acre for 6.7 acres; and that after the taking the value of the property was $46,000, based upon $8,500 per acre for the 5.38 remaining acres; and that in his opinion the damages resulting from the taking were $11,000.

Lawrence testified that he appraised the property not by appraising the part taken but by the differences in his estimates of the market values of the whole before the taking and of the remainder after the taking; that the property after taking is still suitable and adaptable in its southwest corner for an equally valuable and useful service station site; that the property had one station site before the taking and that it still has one station site after the taking; that there never would be room for two filling stations at the same time, side by side or otherwise, on this land in his judgment.

C. Elmer Keefe, called by the state, testified that there was one location, on the corner of 82nd Street and the freeway, which may have been desirable for a filling station before the taking but that after the taking there was likewise a filling station site just as good at the same intersection; that he was sure that two filling station sites at the same corner could not make a living. He also testified that in his opinion the market value immediately prior to the taking of the property was $43,500; that the market value of the remaining property immediately after the taking was $35,000; and that the damages resulting from the taking were $8,500. He testified that in his opinion there was no decrease in the unit value of the property from the taking.

Appellant contends that the expert opinions provided by the state in condemnation proceedings in recent years have been notoriously low; that when these opinions are so low as to be less than one-third of the award made by the disinterested and impartial commissioners they are so obviously biased and wrong that they should be held to be insufficient to support a verdict.

The questions involved on this appeal are: (1) Did the legislature by its 1959 enactment of Minn. St. 117.20, subd. 8(c), limit an adverse party's right to cross-examine a condemnation commissioner when called by one of the parties as its witness at the trial on appeal from the commissioners' award of damages? (2) Is the verdict justified by the evidence?

■ Prior to the enactment of § 117.20, subd. 8(c), the general practice was to hold an award of the commissioners inadmissible. Sherman v. St. Paul, M. & M. Ry. Co. 30 Minn. 227, 15 N. W. 239;

6 Dunnell, Dig. (3 ed.) § 3112; see, 30 C. J. S., Eminent Domain, § 372e; 6 Nichols, Eminent Domain (3 ed.) § 26.731.

Sections 117.14 and 117.20, subd. 8(c), provide that the trial on appeal to the district court in condemnation proceedings shall be a trial de novo and shall be conducted under the Rules of Civil Procedure.[1]

In Northern States Power Co. v. Barnard, 187 Minn. 353, 245 N. W. 609, it was held that court-appointed appraisers in condemnation proceedings are competent witnesses who may be called by either party on appeal. It was claimed in that case that the verdict was excessive,

---

[1]Minn. St. 117.14 reads as follows:

"Such appeal may be noticed for trial as in the case of a civil action, and the court may direct that issues be framed, and require other parties to be joined and to plead therein when necessary for the proper determination of the questions involved. The cause shall be tried by a jury, unless the parties otherwise agree, and the court or jury trying the same shall reassess the damages and apportion the same as justice may require. * * * Except as herein otherwise provided, the trial shall be conducted and the cause disposed of according to the rules applicable to ordinary civil actions in the district court. The court in its discretion may award to the prevailing party the costs and disbursements of the appeal."

Minn. St. 117.20, subd. 8(c), reads as follows:

"Such appeal may be noticed for trial as in the case of a civil action, and the court may direct that issues be framed, and require other parties to be joined and to plead therein when necessary for the proper determination of the questions involved. The cause shall be tried by a jury, unless the parties otherwise agree, and the court or jury trying the same shall reassess the damages and apportion the same as justice may require. Whenever the state is acquiring property, the jury or court shall show in the verdict or order the amount of the award of damages which is to reimburse the owner and tenant or lessee, for the value of the land taken, and the amount of the award of damages, if any, which is to reimburse the owner and tenant or lessee for damages to other property involved. The amounts awarded to each person shall also be shown separately. Except as herein otherwise provided, the trial shall be conducted and the cause disposed of according to the rules applicable to ordinary civil actions in the district court. A commissioner in a condemnation proceeding may be called by any party as a witness to testify as to the amount of the award of the Commissioners."

and this court commented somewhat at length as follows (187 Minn. 355, 245 N. W. 609):

"Our problem is a troublesome one. It is the peculiar province of the jury to determine the amount of the damages. The law does not permit a court, appellate or otherwise, to substitute its own judgment for that of the jury although the verdict may be considerably more (or less) than in the judgment of the court it ought to have been. We would have been better satisfied in this case if the amount had been less. At first glance it seems fanciful. Our statute authorizes the granting of a new trial because of excessive damages appearing to have been given under the influence of passion or prejudice. In Thurston v. Martin, 5 Mason, 497, 499, Mr. Justice Story in discussing excessive damages said:

" 'It is one thing for a court to administer its own measure of damages in a case properly before it, and quite another thing to set aside the verdict of a jury, merely because it exceeds that measure. * * * Upon a mere matter of damages, where different minds might, and probably would, arrive at different results, and nothing, inconsistent with an honest exercise of judgment, appears, I, for one, should be disposed to leave the verdict, as the jury found it.'

"Time has not changed the rule. Where the amount of the verdict does not depend upon computation, the judgment of the jury and not the opinion of the court is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by passion or prejudice. In this case the record discloses nothing to indicate either passion or prejudice unless it be the amount of the verdict alone. In Quinn v. C. M. & St. P. Ry. Co. 162 Minn. 87, 89, 202 N. W. 275, 276, 46 A. L. R. 1228, it is said:

" 'In determining whether a verdict is so excessive that a new trial should be granted, much responsibility rests on the trial judge. He is called upon to exercise a practical and sound discretion. This court does not readily substitute its judgment for his, for he is in a far better position to come to the right conclusion than we are. Properly enough, we defer to his judgment and do not interfere unless it is fairly evident that he failed to keep the jury within the bounds of reason and common sense.'

"In Carter v. Duluth Yellow Cab Co. 170 Minn. 250, 255, 212 N. W. 413, 415, it is said:

" 'The learned trial court has approved the verdict, and our limitations command that we be guided by the general rule applicable to other discretionary orders.' "

In the instant case, as in any condemnation proceedings, the vital question is the difference in the market value of the land involved before and after the taking. The question arises as to who is better qualified to determine the amount than the witnesses and the jurors. No objection was made in the instant case to the qualifications of the witness on either side. All appear to have had a sufficiently wide experience in real estate transactions and values of real estate. Our statutes now provide that a commissioner in a condemnation proceedings may be called by either party to testify as to the amount of the award of the commissioners. The commissioner called to testify here was subjected to a full and complete cross-examination as were the other value witnesses. Liability in the instant case is conceded, so the sole question is the amount of the damages. Of course, this cannot be determined to a mathematical certainty.

Mr. Chief Justice Wilson commented on a somewhat similar situation in the Northern States Power case in the following manner (187 Minn. 358, 245 N. W. 610):

"But in cases of this character the law provides a rule by which damages may be proved. The law provides that the value of the property involved before and after the taking may be proved by the opinion of witnesses. Such evidence of course is not always satisfactory. It is a mere estimate. But there is nothing better obtainable. That is the only kind of evidence that is available. Both parties presented the kind of evidence which the law approves. *It is not, however, binding upon the jury. It is largely advisory.* Its weakness requires it to be received and considered cautiously. The jury is the judge of the credibility of such witnesses. The value of such opinions depends greatly upon their reasonableness. In this case the members of the jury could grasp the full situation, and the facts largely speak for themselves. There could have been no misunderstanding of the facts by the jury.

Persons may differ as to the conclusions to be drawn. *The jury draws its own conclusion, aided by all the witnesses who gave opinions as to value.*" (Italics supplied.)

Appellant attacks the competency of the commissioner to testify to anything other than the amount of the award and also the cross-examination permitted the opposition as to commissioners' awards. There is no basis in the record for disqualifying the appraiser who testified. It is open to both sides to call, as a witness, one or more of the court-appointed commissioners since the enactment of § 117.20, subd. 8(c), and the privilege to cross-examine is open as in the case of any other adverse witness.

The appellant argues that the legislature must have felt that the juries in condemnation cases should have the benefit of knowing what the disinterested and impartial commissioners had found the damages to be. Appellant contends that the legislature has indicated that the award of the commissioners is to be considered a yardstick which the jury should make use of in arriving at its verdict, and if the verdict is greatly in excess of or greatly less than that award, it should be held to be an abuse of discretion for the trial judge to refuse to grant a new trial. The potency of the foregoing argument is greatly reduced when taking into account the testimony relative to the possibility of locating an oil station at the corner of 82nd Street on the tract severed and taken when it now appears from the testimony that an oil station could be located as readily on the remaining tract and that only one oil station in the immediate area would prove feasible.

The jury could well take into account the testimony of the state's witnesses on this issue. We think it was within the discretion of the trial court to receive their testimony, the record indicating that they were competent witnesses.

This court in Mohr v. Williams, 95 Minn. 261, 266, 104 N. W. 12, 14, 1 L. R. A. (N. S.) 439, commenting upon excessive or inadequate damages, said:

"But in any case, whether a new trial upon the ground of excessive or inadequate damages should be granted or refused, or whether the verdict should be reduced, rests in the sound judicial discretion of the

trial court * * * in reviewing which this court will be guided by the general rule applicable to other discretionary orders."

■ It must also be borne in mind that in determining the value of land taken for highway purposes juries are not limited to the knowledge which they acquire from the evidence adduced at the trial. They may rely in part upon the evidence of their own senses and upon their general knowledge and experience. The opinions of experts called to testify are merely advisory and the jury is not bound by the amounts stated by such experts. See, State, by Lord, v. Shirk, 253 Minn. 291, 91 N. W. (2d) 437.

5 Nichols, Eminent Domain (3 ed.) § 18.1. states the rule as follows:

"Generally, the arbiters of the facts, in valuing the land appropriated, are not limited to the knowledge which they acquire from the evidence adduced. They may rely, in part at least, upon the evidence of their own senses when engaged in a 'view' of the premises and upon their own general knowledge and experience. Value is always a matter of opinion. *The opinions of expert witnesses are merely advisory. If they agree with common sense and human experience, well and good. If, however, they differ from ordinary observation, human experience and common sense they may well be ignored.*" (Italics supplied.)

This court in the early case of Johnson v. Chicago, B. & N. R. Co. 37 Minn. 519, 521, 35 N. W. 438, 439, held that opinions of expert witnesses as to value were not conclusive upon the jury, stating:

"* * * Where testimony as to values is mere opinion, the jury are not bound by the amounts stated by the witnesses. The facts and reasons stated by a witness, as a basis for his estimate of value, may be such as to justify the conclusion that the estimate is too high or too low, and the jury surely could not be required to ignore such facts and reasons."

In State, by Lord, v. Shirk, *supra,* this court said that the foregoing authority has been consistently followed by later cases in this state. The rule is that opinions as to value are not binding on the trier of fact.

State v. Wagner, 233 Minn. 241, 46 N. W. (2d) 676, 23 A. L. R. (2d) 762; Housing and Redevelopment Authority v. Zweigbaum, 257 Minn. 233, 100 N. W. (2d) 719.

■ Appellant contends that the court should not have permitted cross-examination of Smaby who it claims was called to testify only to the amount of the award; that the statute does not say that a commissioner may be called to testify *as to the award* but instead it says *as to the amount of the award of the commissioners*. Thus appellant contends the inference is that the commissioner was to be called to testify only as to the amount of the award and not on the reasons for it.

The state contends that this interpretation of the statute is barred because it leads to an unconstitutional result; that the right of cross-examination is fundamental to any adversary proceeding; and that a party cannot be deprived of that right without a violation of a constitutional right. The appellant concedes that this is basically correct but denies that every piece of evidence must always be made subject to the right of cross-examination and argues that there are exceptions, citing 5 Wigmore, Evidence (3 ed.) § 1362. We do not think these exceptions apply in the instant case and that the cross-examination objected to was properly allowed even though prior to 1959 the amount of the award in a condemnation proceedings was not admissible.

In In re County Ditch No. 33, 150 Minn. 69, 71, 184 N. W. 374, this court stated:

"* * * The viewers may be called by either party as witnesses.

"Becoming witnesses they are not witnesses of a kind different from others. They are subject on cross-examination to the usual tests to determine their credibility and the weight of their testimony. They are not immune. A party cannot use them as witnesses and then insist that they be protected against a cross-examination which unfavorably affects their testimony.

*       *       *       *       *

"* * * Make the illustration complete. *Assume that a viewer testifies on behalf of the landowner that his property was not benefited or that the benefits were nominal, should it be held that the county could not show on cross-examination that he found the benefits substantial*

*when he made his view and report? The injustice of a rule not permitting cross-examination is apparent. * * * If a viewer is called by either party, he is, like other witnesses, subject to cross-examination, and inquiry may be made of him of things he said or did at other times materially and directly affecting the credit or weight of his testimony. That it calls for the judgment which he expressed when a viewer, does not make it improper.*

\* \* \* \* \*

"* * * The trial court is charged with the conduct of the trial, and, mindful of the rule that cross-examination of an expert witness on value to determine credibility and weight should be somewhat free, and of the other rule that the extent of cross-examination, especially when directed to matters in their nature collateral, is within its fair discretion, it should not permit the cross-examination * * * when it ceases to be useful or becomes unfair. It may exercise its fair discretion. But such cross-examination is competent." (Italics supplied.)

Also see, Falkenhagen v. Counties of Yellow Medicine, etc. 144 Minn. 257, 175 N. W. 102.

We have recently said that the right of cross-examination is an inviolate right but that it presupposes adversity between the party wishing to cross-examine and the party for whom the witness has been called to testify. Klingbeil v. Truesdell, 256 Minn. 360, 98 N. W. (2d) 134.

The latitude to be allowed in cross-examination on the merits is largely within the discretion of the trial court and its action will not be reversed on appeal except for a clear abuse of discretion. Klingbeil v. Truesdell, *supra.* See, 20 Dunnell, Dig. (3 ed.) § 10318; 98 C. J. S., Witnesses, § 378.

Under the general rule of cross-examination an expert may be asked any question the answer to which might tend to qualify, explain, or render improbable the opinion expressed on direct examination. If an expert's opinion has been properly received, cross-examination is permitted for purposes of testing the weight of his testimony. Therefore, a fact germane to an inquiry, whether the subject of testimony or otherwise, may in the sound discretion of the trial court be used for testing

an expert in cross-examination. 7 Dunnell, Dig. (3 ed.) § 3342, and cases cited therein.

There is nothing ambiguous about the 1959 enactment. It is clear and concise and may be interpreted without the necessity of this court attempting to construe it.

■ After the filing of an appeal from the viewers' report in district court in an eminent domain proceeding it becomes a judicial proceeding and the Rules of Civil Procedure thereafter apply. The general rule that a party is bound by the testimony of his witnesses applies to trials de novo in condemnation proceedings on appeal from the commissioners' award. The owner has the burden of proving and establishing his damages, occupying the position of plaintiff and petitioner the position of the defendant. Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897.

Clearly the state and the appellant are adverse parties because the very nature of condemnation proceedings and appeals to the district court are adverse in character as between the litigating parties.[2]

During trials under the foregoing condemnation statutes the usual procedure is the same as applies in any other civil trial. §§ 117.14 and 117.20, subd. 8(c).

Prior to 1959 the practice in this state permitted calling the commissioners as witnesses to value in trials of eminent domain, 6 Dunnell, Dig. (3 ed.) § 3112; Northern States Power Co. v. Barnard, *supra*; In re County Ditch No. 33, *supra*; although the award itself was inadmissible. Dodge v. County of Martin, 119 Minn. 392, 138 N. W. 675; Cunningham v. County of Big Stone, 122 Minn. 392, 142 N. W. 802; Rooney v. County of Stearns, 130 Minn. 176, 153 N. W. 858.

The proceedings prior to the award of the commissioners, including the petition and evidence thereon, are not before the court for review. The jurisdiction of the district court is appellate and the whole scope of that appeal is to secure a full trial de novo before a

[2]City of Minneapolis v. Wilkin, 30 Minn. 140, 14 N. W. 581; Duluth Transfer Ry. Co. v. N. P. R. Co. 51 Minn. 218, 53 N. W. 366.

jury on the question of damages, involving basically the same matters submitted to and passed upon by the commissioners in the first instance. In the end, the sole issue before a district court and jury is the amount of damages to be awarded.

It is clear that §§ 117.14 and 117.20, subd. 8(c), do not change the law regarding the competency of viewers as witnesses since they provide for the trial procedures to be followed in condemnation appeals to the district court specifically including reassessment of damages in keeping with the concepts of a trial de novo in such cases. See Pettingill Theatre Co. v. City of Minneapolis, 256 Minn. 266, 98 N. W. (2d) 207, in which case this court clearly points out that when the legislature did intend that some provision of Minn. St. c. 117 should be applicable it *clearly expressed* such intent. But the court also held there that the *effect of prior* decisions of this court would not be changed by the amendment.

Clearly had the legislature intended to abrogate cross-examination of commissioners by an adverse party it would not have legislated merely in a permissive manner to allow either party if it so desired to call a commissioner as a witness and allow the party calling such witness to adduce substantive testimony from him.

■ Since there is nothing ambiguous about the statute demanding efforts from this court to construe its meaning, it must be interpreted in the light of Minnesota law and practice as it existed immediately prior to its passage and in connection with the other provisions of Minn. St. c. 117. The law is specific in stating that the party calling a commissioner calls him as that party's own witness.

Certainly the legislature must be deemed to have enacted the provision realizing that condemnation trials are adverse proceedings. We think that to presume that the legislature intended to abrogate basic rights of parties to cross-examination would result in an absurdity. This court has frequently reiterated the rule that an interpretation of a statute which will lead to an absurd result is to be avoided if the language used will reasonably bear any other construction. Sevcik v. Commr. of Taxation, 257 Minn. 92, 100 N. W. (2d) 678.

■ The commissioner who was called as a witness here testified on cross-examination that the commissioners' award was not only the

award, as such, but that he had an opinion as to the damages, and that it was also his opinion of the damages for the taking. When this witness was called, sufficient facts were elicited on direct examination to qualify him as an expert to testify as to values of real property and more specifically as to a before and after value of the property involved in the instant case. It is our view that the general rule that experts may be cross-examined to find the basis or foundation of an expressed opinion is applicable to this witness. The general rule is also applicable that based upon the sound discretion of the trial court, cross-examination should not be limited strictly to matters brought out on direct examination. The record indicates that Smaby was not put in the position of having to justify the award but merely was called upon to explain the legal basis and elements of the award, and how it was computed, since it was characterized as such in his value testimony and opinion expressed. The latitude which the trial court permitted in the cross-examination of Smaby was within the discretion of the trial court.

■ The only other issue before us is whether the verdict of the jury is supported by the evidence and justified by the opinion testimony of the state's witnesses. Appellant has conceded that there is some support for the verdict in the record.

Referring to the somewhat different grounds relied upon by appellant in its motion for a new trial in the lower court and its assignment of errors on appeal, we are required to go no further, after disposing of its first assignment, than to answer the question: "Is the verdict justified by the evidence?" See Rule 59.01, Rules of Civil Procedure, as to the requirement that errors be plainly assigned. In Larson v. Degner, 248 Minn. 59, 63, 78 N. W. (2d) 333, 336, this court stated:

"In his alternative motion in the lower court for judgment notwithstanding the verdict or a new trial, Degner set forth *six grounds of error*. On this appeal, however, his brief contains but one *assignment* of error, to wit: 'The District Court erred in *denying appellants' Motion for a new trial* of all issues in the case.' *An assignment that the lower court erred in refusing to grant a new trial is insufficient to*

*raise any question other than whether the evidence justifies the verdict or finding.*" (Italics supplied.)

See, also, Malmquist v. Leeds, 245 Minn. 130, 71 N. W. (2d) 863.

All of the testimony relating to damages was nothing more than opinion evidence. It is within the province of the jury in determining cases of the character herein to determine the damages suffered by the one who appeals from the viewer's report. When the question of damages is submitted to the jury the opinions of the experts are merely advisory, and the jury is not bound thereby. The jury may give more weight to the witnesses' testimony of one side than that of the other, but that fact is not a sufficient ground for granting of a new trial. This court affirming the denial of a new trial in State, by Lord, v. Shirk, *supra,* stated (253 Minn. 293, 91 N. W. [2d] 438):

"* * * it has long been the rule in this state that opinion testimony as to value is not binding upon the jury. * * * Opinions of expert witnesses are only advisory and the jury may weigh such evidence in the light of all the facts and opinions presented to it, and draw its own conclusions from it. It is only where the question relates to a matter of science or specialized art, or other matter of which a jury must be presumed to have no knowledge, that a jury must accept the opinions of experts as conclusive."

See, also, Johnson v. Chicago, B. & N. R. Co. 37 Minn. 519, 35 N. W. 438; 5 Nichols, Eminent Domain (3 ed.) § 18.1; State, by Lord, v. Bradac, 257 Minn. 467, 102 N. W. (2d) 34; Minneapolis-St. Paul Sanitary Dist. v. Fitzpatrick, *supra.*

The appellant did not either in its motion for a new trial or in its assignments of error base its claim on the insufficiency of the verdict due to the influence of passion and prejudice. Neither does the record show anything to indicate that the jury was influenced or motivated by passion or prejudice.

We are confronted with a conflict between experts on value, with the jury more or less adopting the view of the state's witnesses. The state as prevailing party below is entitled to the benefit of the rule that we view the evidence in the aspect most favorable to the jury's verdict. Viewing the record as a whole it is clear that different per-

sons might reasonably draw different conclusions from the evidence. Therefore, the verdict should not be disturbed. A new trial should not be granted upon conflicting evidence unless the verdict is so manifestly contrary to the preponderance of the evidence as to warrant the inference that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling, or caprice, instead of dispassionately and honestly exercising their judgment upon all the evidence. This court in Brewitz v. City of St. Paul, 256 Minn. 525, 539, 99 N. W. (2d) 456, 465, said:

"The verdict has been approved by the trial judge who heard the witnesses and the evidence and had an opportunity to consider the condition of plaintiff's property during the progress of the trial. We see no basis after a full consideration of the record for concluding either that the court abused its discretion or committed prejudicial error throughout the trial. The order of the trial court denying defendant's motion for judgment notwithstanding the verdict or for a new trial must be affirmed."

When the record is viewed as a whole it becomes clear that the issues herein were for the jury. We conclude that the legislature has adopted reasonable procedural statutes which do not eliminate the right of cross-examination. It cannot be said with any degree of justification that the appellant's evidence preponderated. The jury had a right to and did adopt the opinions of state's witnesses.[3] The testimony is ample to support the verdict and we feel bound to conclude that the lower court did not abuse its discretion in denying appellant's motion for a new trial.

Affirmed.

---

[3]State, by Lord, v. Frisby, 260 Minn. 70, 108 N. W. (2d) 769.