THE PEOPLE OF THE STATE OF NEW YORK ex rel. UNITED STATES RUBBER COMPANY, Appellant, *v.* WALTER H. KNAPP et al., Constituting the State Tax Commission, Respondents.

Mortgage tax — appraisal of value of leasehold interest covered by mortgage — terms of lease and evidence of character and capacity of building, location, demand for space, rentals, expense of maintenance and other charges should be considered in fixing value.

Relator executed a mortgage which covered its interest under a certain lease. The state tax commission in appraising the value of the lease for the purpose of fixing the amount of the mortgage tax rejected the evidence of an expert witness and adopted as the value of the leasehold interest the cost of a building erected by the relator less the amount charged off on account of depreciation as the same appeared on the books of account of the relator. *Held*, error; that recourse to the terms of the lease is essential to ascertain the extent of the estate of the landlord and tenant. In addition thereto evidence bearing upon the character and capacity of the building erected by the tenant, adaptability of the same for commercial purposes, the location of the site, the expense of erection of the building, demand for space therein, rentals derived therefrom, the expense incident to maintenance thereof and the charges to be assumed by the tenant under the lease have a direct bearing upon the value of the lease and are proper to be considered by the commission as well as by witnesses qualified to testify upon the subject of value upon a given state of facts.

*People ex rel. U. S. Rubber Co.* v. *Knapp,* 197 App. Div. 913, reversed.

(Argued October 10, 1921; decided November 22, 1921.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 9, 1921, which confirmed in certiorari proceedings a determination of the state tax commission fixing a mortgage recording tax on a mortgage made by relator and recorded in New York county.

The relator is a foreign corporation doing business in the state of New York. On or about March 5th, 1917, it executed a mortgage to the Central Trust Company of New York and one James N. Wallace as trustees, to secure the payment of certain bonds in the amount of $97,252,900. At the time of the execution of the mortgage there was advanced thereon the sum of $60,000,000. The lien of the mortgage covered real and personal property in this state, also a large amount of real and personal property situate elsewhere.

The trust mortgage included certain real property owned by relator situate at Fifty-eighth and Fifth-ninth streets and Eleventh avenue in the city of New York, the value of which as given by the company was $229,-806.23. Included in and covered by said mortgage are certain premises located on Broadway and Fifty-eighth street in the city of New York, specifically described by metes and bounds, and the interest of relator therein described as " All the right, title and interest of the Company under an indenture of lease dated May 1, 1911, from Mary A. Fitzgerald to the Company."

Relator presented the mortgage for record to the register of New York county, together with a statement purporting to show the value of the tangible property covered by the mortgage within and without the state of New York. In such statement relator included the real property located at Eleventh avenue and Fifty-eighth and Fifty-ninth streets and paid the mortgage tax thereon. The present proceeding does not involve that property or the tax thereon. Relator omitted from the statement filed by it the Broadway property insisting that the interest of the company therein was valueless. Pursuant to the provisions of the Tax Law a hearing was held before the state tax commission and the commission thereafter determined that the total value of the tangible property of relator situate within this state covered by the trust mortgage was $1,879,806. Deduct-

ing therefrom the stated value of the Eleventh avenue property, $229,806.23, resulted in a valuation of the leasehold interest of relator in the Broadway property as fixed of $1,649,999.76 upon which an additional recording tax of $23,189.10 was imposed.

The determination of the state tax commission was confirmed by a non-unanimous decision of the Appellate Division and from the order of confirmation relator appealed to this court.

*Lewis E. Carr* and *Herman Goldman* for appellant. The Appellate Division erred in its decision confirming the determination of the state tax commission as to the value of the leasehold interest of the relator in the premises at Broadway and Fifty-eighth street, as the facts before that commission did not justify or support the value it placed on such leasehold interest. (*Matter of City of New York*, 120 App. Div. 700; *Clarkson* v. *Skidmore*, 46 N. Y. 297; *People ex rel. D. & H. Co.* v. *Feitner*, 61 App. Div. 129; *Matter of William & Anthony Sts.*, 19 Wend. 678; *Larkin* v. *Misland*, 100 N. Y. 212.) There was nothing before the state tax commission which justified it in determining the value of the leasehold interest of the relator in the Broadway and Fifty-eighth street premises was $1,649,999.77, and requiring it to pay $23,189.10 additional recording tax thereon, nor was there anything in the record before the Appellate Division which justified it in confirming such determination. (*Matter of William & Anthony Sts.*, 19 Wend. 678.)

*Charles D. Newton*, Attorney-General (*James S. Y. Ivins* of counsel), for respondents. The evidence relied upon by the tax commission was competent, and sufficient to sustain the determination. (*Matter of Delancey Street*, 120 App. Div. 700; *People ex rel. Bankers S. C. Co.* v. *O'Donnel*, 54 Misc. Rep. 5; *People ex rel. Powers* v. *Kalbfleisch*, 25 App. Div. 432; *People ex rel. D. & H.*

*Co.* v. *Feitner,* 61 App. Div. 129; 171 N. Y. 641; *People* v. *Barker,* 31 App. Div. 345; 158 N. Y. 709; *People ex rel. P. R. R. Co.* v. *Comrs. of Taxes,* 104 N. Y. 240; *People ex rel. Knickerbocker S. D. Co.* v. *Wells,* 99 App. Div. 455; *People ex rel. Batt* v. *Rushford,* 81 App. Div. 298; *People ex rel. Automatic Vending Co.* v. *Kelsey,* 101 App. Div. 325; *People ex rel. Koechl & Co.* v. *Morgan,* 96 App. Div. 111.)

HOGAN, J. The interest of the relator in and to the real property valued by the state tax commission for the purposes of the mortgage tax is detailed at length in the lease of the premises dated May 1st, 1911. Certain provisions of the instrument to which attention should be called are:

The term is twenty-one years from May 1, 1911, the rental for the first year is $20,000, thereafter the annual rental to be $40,000, payable in installments on the first day of each and every month during said term.

The tenant (relator) covenanted that it would within sixteen months from the commencement of the term erect and complete a substantial modern fireproof building for business purposes which should cover at least eighty per cent of the demised premises of at least twelve stories in height and cost and be of the value of at least $450,000, to keep such building in suitable and proper repair, keep the rentals of the building and the building insured for the benefit of the landlord and pay all duties, taxes, assessments, water rates and charges against said premises or their appurtenances during the term of the lease.

The lease contains provisions for renewal of the same. for one, two or three successive terms of twenty-one years each. In the event that such option or options are exercised by relator the covenants of the renewal leases, except for the erection of the building, are to be substantially as in the first lease. In case of the failure of the parties to agree upon the rent for each new term

an appraisal of the value of the land leased is to be made and five per cent of such appraised value to be paid annually as rental during the new term, but in no event is such new rental to be less than that paid during the prior term.

A right of re-entry is reserved to the landlord in the event of the tenant (1) defaulting in the payment of any part of the yearly rental for a period of five days after demand for payment of the same, or (2) if at any time tenant shall be adjudged a bankrupt or insolvent by any court, or if a trustee in bankruptcy or a receiver of the property of the tenant including the term granted or any part thereof shall be appointed and such term or rights be not freed from such trusteeship or receivership within thirty days after such appointment, or (3) default shall be made in any of the other covenants contained on the part of the tenant, which shall continue for thirty days.

Upon expiration of said term, or upon the sooner termination of the estate granted, the building and building material are to remain and become the sole property of the landlord and nothing is to be allowed or paid by her therefor.

The record discloses that relator immediately upon taking possession of the realty erected a modern fireproof building twenty stories in height covering a plot of ground of one hundred eight feet on Broadway, one hundred twenty-six feet on the northerly line, one hundred feet on its easterly line and eighty-six feet on its southerly line, comprising about eleven thousand square feet, presumably covering eighty per cent of the leased premises. The building consists of one large store occupied by relator and subsidiary companies and the remainder of the building is devoted to offices. The cost of the building was $1,800,000.

Upon the hearing before the state tax commission an expert in real estate matters was examined as a witness.

He gave an estimate for the year 1917 of the total rental obtainable for the building as $180,000, and approximated the cost of maintainance $80,000, ground rent $40,000, taxes $33,000, insurance $2,500, making a total of $155,-500, leaving a net return of $24,500. He also testified in substance that the expenditure of $1,800,000 by the relator was improvident for a building in that neighborhood, that the building was too elaborate and as constructed was a case of wild extravagance having in view the rentals possible to be derived therefrom; that in his opinion by reason of the clauses in the lease to which attention has been directed $50,000 per year should be written off for depreciation and in his opinion the lease was valueless.

The treasurer of relator was called as a witness by the commission and testified that the books of. relator disclosed that the building was treated as an asset at $1,800,000, and likewise was treated as an asset in the annual reports of relator to its stockholders; that the books further disclosed that as against the cost of the building the sum of $25,000 had annually been charged off.

Counsel for the commission in his brief asserts: " The Tax Commission appraised the lease upon the relator's own statement of *cost less depreciation* which was also *book value*," and that the commission was not justified in accepting relator's appraisal of property within this state as the same was inconclusive. While evidence of the methods employed by relator in keeping its accounts disclosing the investment made by it in the erection of the building and the amount annually charged off for depreciation, etc., is proper for consideration by the commission there remained material facts which have direct bearing upon the question to be ultimately determined, viz., the actual value of the leasehold interest, or in other words the actual value of the lease. The rights and interests of the owner of the fee and the holder of the leasehold interest are defined by the lease in force

between them. Recourse to the terms of that instrument is, therefore, essential to ascertain the extent of the estates of the landlord and tenant. Therein is contained the term of the leasehold interest and any right to renewals of the same, the consideration to be paid by the tenant, the time of payment and the result of a default in payment, likewise all covenants to be performed by the tenant, the rights of the landlord and particularly in the event of default of the tenant or at the end of the term to resume possession of the property without allowance therefor, these and other provisions of the lease are material to be considered in reaching a determination as to the actual value of the lease. In addition to the provisions of the lease evidence bearing upon the character and capacity of the building erected by the tenant, adaptability of the same for commercial purposes, the location of the site, the expense of erection of the building, demand for space therein, rentals derived therefrom, the expense incident to maintainance thereof and the charges to be assumed by the tenant under the lease have a direct bearing upon the value of the lease and are proper to be considered by the commission as well as by witnesses qualified to testify upon the subject of value upon a given state of facts.

As to whether or not the relator was improvident in the expenditure of $1,800,000 in the erection of a building on the premises is immaterial. Witnesses may reach diverse conclusions upon that question which would tend to confuse rather than clarify a solution of the question to be determined. Presumably the relator gave due consideration to the project and in anticipation of the long term provided for in the lease concluded that the investment to be made by it was beneficial.

The views expressed and the conclusion reached finds support in numerous decisions of the courts. (*People ex rel. D. & H. Co.* v. *Feitner*, 61 App. Div. 129; affd., 171 N. Y. 641; *Larkin* v. *Misland*, 100 N. Y. 212; *Clarkson*

v. *Skidmore*, 46 N. Y. 297; *Matter of City of New York*, 120 App. Div. 700; *Matter of William & Anthony Streets*, 19 Wend. 678.)

The state tax commission concededly rejected the evidence of the expert witness of the relator whom it examined in the proceeding and adopted as the value of the leasehold interest the cost of the building less the amount charged off on account of depreciation as the same appeared on the books of account of the relator. While evidence of such account was proper for consideration by the commission we are led to a conclusion that the commission should in connection therewith take into consideration the terms and conditions of the lease under which the relator held the premises particularly the clauses to which attention has been directed. Such course would naturally be adopted by any individual or corporation in the event that the interest of the relator in the real property was offered for sale or assignment and should prevail before the commission.

The order of the Appellate Division should be reversed and the proceeding remitted to the state tax commission for a rehearing, with costs in this court and in the Appellate Division.

ANDREWS, J. (concurring in memorandum). The tax is based upon the present value of the leasehold interest. Upon a sale of this interest to-day the purchaser would acquire possession of the property as it is for the term of the lease subject to the conditions contained therein. To him, for practical purposes, the value of the lease of a mercantile building such as this would be measured by the difference between the expense of managing the leased property — rental, repairs, insurance, commissions for collecting rents, and similar, items — and the sub-rentals which he does or might receive.

This rule indicates the nature of the evidence that may be received on a new trial. Doubtless experts

might testify as to the value of the lease. Doubtless much competent testimony might be given bearing more or less remotely upon the question at issue. But the present net return which it is said the lessee might receive is $24,500. The lease may be held for eighty-one years, less that part of the term which has already expired. Is $24,500 likely to be the average return until the end of the lease? If so, the present value of an income of $24,500 to be received until the end of the term is the clearest measure of the value of the leased estate. If not, what is likely to be the average net return for that time?

POUND and CRANE, JJ., concur with HOGAN, J.; ANDREWS, J., concurs in memorandum; HISCOCK, Ch. J., CARDOZO and McLAUGHLIN, JJ., concur in opinion and memorandum.

Order reversed, etc.