Coös,
Oct. 6, 1925.

F. W. WOOLWORTH COMPANY v. BERLIN & a.

At common law, and in the absence of a different agreement by the parties to the lease, the estate of a tenant is not terminated by a partial taking of the leased property.

A provision in a lease that if "the building on said premises shall be totally destroyed by fire or by the elements, or shall be condemned for public use, or be destroyed as unsafe," the lease shall terminate, preceded by provisions as to partial loss by fire or the elements, with no reference to condemnation, contemplates the termination of the lease only upon a condemnation of the whole building.

The lessee of premises a part of which is condemned for public use is entitled to compensation for his loss.

APPEAL, from a refusal of the mayor and aldermen of Berlin to award damages to the plaintiff for its rights in land taken for a highway.

The plaintiff is the lessee, for a term expiring in 1929, of land and buildings thereon, situated on Main and Green streets in Berlin. The Berlin National Bank is the grantee of the lessor. In their report laying out a widening of Green street, covering a portion of the leased property, the mayor and aldermen state that "To F. W. Woolworth Company no damages are awarded, as they have no rights in said property adverse to the Berlin National Bank, who are receiving compensation."

In the superior court, *Young*, J., transferred the following questions without ruling and in advance of a trial:

If said decree of condemnation is affirmed, will said condemnation of a portion of the leased premises as aforesaid work a forfeiture of

and terminate the term of said lease so that the same shall cease and come to an end?

If said condemnation proceedings and decree of condemnation thereunder would otherwise be held to work a forfeiture of and terminate the term of said lease so that the same would cease and come to an end, is it material whether, as this petitioner contends, said Berlin National Bank, and its attorneys, agents, and servants, at the hearing before said Mayor and Aldermen with relation to said condemnation proceedings, and in its advocacy of said petition, urged and accomplished said partial condemnation of the petitioner's estate in order that said decree of condemnation might terminate the petitioner's lease and for the purpose of terminating said lease?

Certain provisions of the lease are stated in the opinion.

*Demond, Woodworth, Sulloway & Rogers*, for the plaintiff.

*Robert Rich*, for the defendants.

PEASLEE, C. J.  "Article 12 of our bill of rights authorizes the taking of the property of individuals . . . and the appropriation of the same to public uses, provided it be not done without the consent of the owner or the consent of the representative body of the people. When the owner does not consent, then it has always been held that land might be taken by consent of the representative body of the people, to wit, by an act of the legislature, by making just compensation therefor, but not otherwise." *Ash* v. *Cummings*, 50 N. H. 591, 612. The plaintiff's leasehold estate was property and was protected by this constitutional guaranty. If the whole or any part of the plaintiff's right has been taken for public use, the plaintiff is entitled to compensation therefor.

The highway statutes recognize the title of a tenant for years, and provide for separate notice to him of a proposed highway layout which will affect his interest, and for a separate assessment of his damages. P. S., c. 67, ss. 6, 18. He is entitled to be heard, and to have his damages assessed and paid. *Lyford* v. *Laconia*, 75 N. H. 220, 221; *Grand Trunk Railway Company* v. *Berlin*, 68 N. H. 168.

Upon the question whether taking a part of a leasehold estate under eminent domain proceedings terminates that estate, the authorities are not wholly agreed. The weight of authority is to the effect that the estate continues. *Parks* v. *Boston*, 32 Mass. 198; *Stubbings* v. *Evanston*, 136 Ill. 37; *Corrigan* v. *Chicago*, 144 Ill. 537;

*Gluck* v. *Baltimore,* 81 Md. 315; *Olson Land Company* v. *Alki Park Company,* 63 Wash. 521. The following cases hold to the contrary. *Biddle* v. *Hussman,* 23 Mo. 597; *Levee Commissioners* v. *Johnson,* 66 Miss. 248.

"There seems to be great difficulty in discovering any principle, upon which it can be legally held, that the taking of a part of an estate which is under lease, for a public easement, will put an end to the lease, or deprive the lessee of his term, or exempt him from his liability to pay the reserved rent. . . . There are many cases in which the tenant has a highly valuable and beneficial interest in his term, as where he holds it for a long term, on a building lease, at a moderate ground rent, or at a mere nominal rent, or where a large fine has been paid upon the commencement or renewal of the lease. It may be, that notwithstanding the estate is diminished in quantity by the taking for public use, it is not diminished in value, but even increased in value to the lessee, for the purposes of business to which he may have occasion to apply it. Upon what principle can it be held, that in any of these cases, the term is *de facto* extinguished and annihilated by the taking of a part, perhaps a small and unimportant part, of the leased property, for public use? . . . The lessee takes his term, just as every other owner of real estate takes title, subject to the right and power of the public to take it or a part of it, for public use, whenever the public necessity and convenience may require it. Such a right is no incumbrance; such a taking is no breach of the covenant of the lessor for quiet enjoyment. The lessee then holds and enjoys exactly what was granted him, as a consideration for the reserved rent; which is, the whole use and beneficial enjoyment of the estate leased, subject to the sovereign right of eminent domain on the part of the public. If he has suffered any loss or diminution in the actual enjoyment of this use, it is not by the act or sufferance of the landlord; but it is by the act of the public, against whom the law has provided him an ample remedy. If he is compelled to pay the full compensation, for the estate actually diminished in value, this is an element in computing the compensation which he is to receive from the public. In this view, it becomes unimportant, in settling the principle we are now discussing, whether the taking for public use diminishes the leased premises, little or much, in quantity or in value; all this will be taken into consideration in assessing the damages, which the lessee may sustain." *Parks* v. *Boston,* 32 Mass. 198, 203, 204, 205.

The opinion above quoted states the true rule. At common law,

and in the absence of a different agreement by the parties to the lease, the estate of a tenant is not terminated by a partial taking of the leased property for a public use. But it is urged that the parties to the lease here under consideration made an agreement upon this subject. The lease contains the following provisions: ". . . in case the building or buildings erected on the premises hereby demised shall be partially damaged by fire or by the elements, the same shall be repaired as speedily as possible at the expense of the said landlord, and in case the damage shall be so extensive as to render the building untenantable, the rent shall cease until such time as the landlord shall put the building in complete repair, but in case the building on said premises shall be totally destroyed by fire or by the elements, or shall be condemned for the public use, or be destroyed as unsafe, the rent shall be paid up to the time of such destruction or time when such condemnation shall become effective, as the case may be, and then and from thenceforth the term of this lease shall cease and come to an end. . . ."

The plaintiff claims that the foregoing agreement applies only to a taking of the whole, while the defendant's position is that it is also applicable to a taking of part. It is to be observed that the insertion in the lease of any stipulation upon this subject shows that the parties understood that the lease would not terminate upon a taking of the property, unless they so agreed. The agreement is to be interpreted in the light of this circumstance. Understanding that an agreement was necessary to work a termination of the lease, and making one set of specifications relating to partial deprivation of use and another as to total, they inserted the provision as to taking among those relating to total deprivation and omitted it elsewhere. The omission of this stipulation from those relating to partial deprivation or unusability is some evidence of an intent not to make an agreement upon that particular matter. It seems apparent that the two provisions as to condemnation both relate to proceedings as to the whole building, and the agreement is so construed.

The plaintiff continues to own the leasehold estate it bargained for, subject to the taking of a portion thereof; and for that taking it is to be compensated to the extent of its loss.

This conclusion renders it unnecessary to consider the other question transferred.

*Case discharged.*

All concurred.