# STATE, BY G. A. YOUNGQUIST, ATTORNEY GENERAL, v. BERTHA ANDERSON AND OTHERS.[1]

March 8, 1929.

No. 27,089.

See note in 9 L.R.A.(N.S.) 781; L. R. A. 1918A, 884; 49 A. L. R. 703; 10 R. C. L. 158; 2 R. C. L. Supp. 983; 7 R. C. L. Supp. 322.

[1]Reported in 223 N. W. 923.

*G. A. Youngquist,* Attorney General, and *Hayner N. Larson,* for the state.

*J. H. Green, Clarence O. Johnson* and *A. X. Schall, Jr.* for respondents.

WILSON, C. J.

The state appealed from an order denying its motion for a new trial.

Lands were condemned for trunk highway No. 52. Peter Huber owns a farm which is leased to his son, Henry Huber. The trunk highway follows an existing road except that it makes an easy curve at the corner and thereby separates from the farm a triangular tract of about four acres. The farm is used for general farming and for truck and vegetable farming. It is located in a rural community but within a few miles of the Twin Cities and is valued as high as $800 per acre. Damages were awarded to both the fee owner and the owner of the leasehold.

The rule is that the gross damages to be awarded shall first be determined, and then the award is to be apportioned among those who have various interests in the land. The total amount of damages must be the same whether the land is owned by one person or several. The court did not follow the rule stated but told the jury that because the ownership of the land was divided between two persons, one owning the fee, subject to the outstanding leasehold interest, and the other owning that interest, it was necessary for them to return two verdicts, one relative to the fee and the other relative to the leasehold. This was done. It is now claimed to be error.

■ It is sufficient to say that the state did not object to the method of submission to the jury at the time of trial. It acquiesced therein. It did not request the court to follow the correct rule, nor did it take any exception to the instructions as given. It was the duty of the jury to apportion the damages after they determined the amount thereof. G. S. 1923, § 6550. It would seem that the erroneous procedure was harmless; but in any event the state, having failed to protect the record, cannot complain. The case of Peterson v. City of Minneapolis, 175 Minn. 300, 221 N. W. 14, involving a proceeding under a different law, does not hold that the court may not permit a jury to apportion the damages under some circumstances.

■ The state's evidence in an effort to prove special benefits to reduce the damages was received but stricken as to the owner of the leasehold and permitted to stand as to the fee owner. Such damages can only be reduced by such special benefits as accrue to the owner of the particular estate by reason of the present and actual physical effect upon the property resulting directly and proximately from the improvement. Such special benefits, which must be special to the estate involved, usually alter the physical character of the land, and indeed must be such as result to the land, not to the vicinity or community because of the improvement. They must be peculiar to the land involved and are distinct from the general intangible benefits which are supposed to flow to the general public. Mantorville Ry. & T. Co. v. Slingerland, 101 Minn. 488, 112 N. W. 1033, 1 L.R.A.(N.S.) 277, 118 A. S. R. 647; M. St. P. R. & D. E. T. Co. v. Harkins, 108 Minn. 478, 122 N. W. 450; L. R. A. 1918A, 884, Anno; 20 C. J. p. 822, § 259; 9 L.R.A.(N.S.) 781, note. Special benefits do not however become general merely because they are common to some other property in the vicinity. Added value to the particular property cannot be rejected solely because other property in the immediate vicinity may also be specially benefited. The benefits which the landowner enjoys peculiar to his land must be deducted, but such benefits as he may enjoy in common with the whole community must not be deducted.

■ The contention is that because of the construction of this paved highway, which is a part of our extensive trunk highway system, it will carry heavy traffic and because thereof make the abutting land become suitable for commercial purposes such as oil filling station, truck garden station, confectionery and other similar businesses, including places for large signboard advertising. Perhaps the last mentioned use has peculiar application to the triangular tract of ground, which is on the outside of the curve, as signboards placed thereon would be directly in front of the approaching motorist.

The evidence was considered by the jury in reference to the fee owner. We need not discuss the very pertinent questions of the speculative, contingent or remote character of this evidence, nor consider whether there is a reasonable expectation of some demand at some time for the use of the land for such purposes. Nor need we consider the element of improbability of a farmer tenant having a lease for only two years incurring the expense of constructing buildings along a country highway for commercial purposes. It is sufficient to point out that the record does not disclose that the tenant had any right to appropriate any portion of the farm for such purposes; hence he was not entitled to have such evidence go to the jury.

■ The court excluded opinion evidence to show that the traffic on the trunk highway would have a beneficial advantage to the farm. There was no offer of proof to show how this conclusion could be reached. Perhaps it was not the intention to show such resulting advantage to the land as a farm. Possibly it rested on the supposition that the land was suitable for commercial purposes. But upon the record we must assume that it was directed to the farm as such, and if the traffic would be beneficial to the farm it would necessarily be one of the intangible benefits enjoyed by the general public. This is not a case where traffic is diverted to city property used for retail shops. Nor can we assume in the absence of an offer of proof that the question was based upon the theory that the farmer could reach more people by a roadside sign advertising what he might have for sale. The state cites State ex rel. Hilton

v. Lambert, 171 Minn. 369, 214 N. W. 653, as supporting its contention. In that case the inconvenience in the use of the farm due to the fact that its land peculiarly fit for pasture was cut off from the farmstead was held to be an element for consideration for fixing value. The Lambert case in no way supports the state's present claim.

Affirmed.

