## MINNEAPOLIS-ST. PAUL METROPOLITAN AIRPORTS COMMISSION v. HEDBERG-FREIDHEIM COMPANY.[1]

May 14, 1948.

No. 34,644.

*Oppenheimer, Hodgson, Brown, Donnelly & Baer,* for appellant.
*O. A. Brecke* and *E. T. Chesnut,* for respondent.

PETERSON, JUSTICE.

After a verdict for $22,000 for the taking by petitioner in con-demnation proceedings of a leasehold of land on which there was a hangar belonging to the lessee, petitioner appeals.

We shall discuss only two of the numerous questions raised on the appeal, because decision with respect to them requires a reversal and because the others are not likely to arise on a new trial. These are:

---

[1]Reported in 32 N. W. (2d) 569.

(1) Whether, in condemnation proceedings under the power of eminent domain for taking a leasehold interest in land on which there is a building belonging to the lessee, the valuation for purposes of determining the amount to be awarded the owner of the leasehold should be made of the leasehold and the building as a unit, or whether it should be the sum of the values of the leasehold and the building considered separately; and,

(2) Whether a tripartite contract between the lessor (to whose rights the condemnor succeeded), the lessee, and a third party contemplating purchasing the lessee's interest under the lease which provided for a formula for determining the value of the leasehold and building as a unit was admissible as bearing on the question of value.

Petitioner is the operator of Wold-Chamberlain Field airport. The fee belongs to the city of Minneapolis and was under the jurisdiction of the city's park board. The city leased a lot at the airport to respondent, which has erected a hangar thereon. Petitioner has succeeded to the city's rights as lessor under the lease.

This proceeding was brought by petitioner under M. S. A. 360.107, subds. 2 and 3, to acquire by right of eminent domain the lessee's right and interest under the lease, the hangar, lean-to, and certain personal property in those buildings. On the appeal we are concerned only with the amount to be awarded the lessee and the manner of determining it.

The lease, executed in 1940, was for a term of ten years. A rental of $100 per month, subject to change by the lessor, was reserved. There were provisions prohibiting the lessee from subletting and assigning without the lessor's written consent; agreeing that buildings and structures placed on the land by the lessee should not become "part of the realty"; permitting the lessee to remove at the expiration of the lease the hangar thereon; requiring the lessee, if it removed the hangar, to restore the land on which it stood to as good condition as it was when the lessee entered thereon; and if the lessee did not so remove the hangar the lessor was to get title to it automatically.

At the time of the award by the commissioners the lease had about four years to run, and the lessee's hangar, lean-to, and certain personal property therein were on the leased land.

At the trial, respondent offered evidence to show the separate values of the leasehold and of the hangar. While it is not clear, and perhaps makes no difference here, we assume that the personal property was included as fixtures in the buildings mentioned. There was evidence on behalf of respondent that the value of the leasehold based on net rental ranged between $17,900 and $50,000. The latter figure was based upon a capitalization of yearly income and represented the value of the property in fee, and not of the lessee's leasehold interest, which had only four years to run. The testimony concerning the value of the hangar ranged from $15,000 to about $64,000. Petitioner offered testimony to show that the value of the leasehold and buildings thereon as a unit was somewhere between about $6,800 and $9,500. After pointing out that there was a taking of both the leasehold and the hangar, the court, over petitioner's objection, instructed the jury:

"Now, in determining that reasonable market value you may find it necessary to determine what was the reasonable market value of the leasehold itself as well as the reasonable market value of the hangar itself, all as of August 9, 1946, and the sum of these two items, if you use that method, will constitute the amount to which the Company is entitled and to be inserted in your verdict. The amount to which the Company is entitled for the taking of the leasehold, including the hangar, is the fair, reasonable market value of said property as of August 9, 1946, and that is the duty of this jury to determine in this case."

During the trial the court excluded, upon respondent's objection, a tripartite contract between the park board as lessor (petitioner has succeeded to lessor's rights), respondent as lessee, and George Bringhurst as purchaser of the hangar from the lessee under conditional sales contract, by the terms of which lessor consented to a sublease to Bringhurst until he acquired full title to the hangar and

afterward to an assignment of the lease to him, and in consideration thereof the parties agreed not only as to Bringhurst, but also as to "the owners of said lease," that the formula for valuing the leased premises if the lessor acquired them by condemnation or by voluntary sale should be (1) no allowance for unexpired portion of the lease, good will, going concern, and additions to the hangar; (2) a valuation of the hangar as of June 8, 1941, of $15,000, which was to be depreciated annually for three years at $2,000 per year and thereafter at $1,500 per year for the balance of the term (the lease then had nine years to run and consequently according to the formula at the time of the taking the depreciated value of the lessee's interest in the property was only $6,000); and (3) the owner of the lease was to have the right to remove the hangar as salvage. Bringhurst defaulted, and his rights as purchaser under the conditional sales contract were terminated. Subsequently, on July 21, 1941, lessor and respondent, as lessee, entered into a contract by the terms of which it was agreed that another tract of land should be substituted for the one described in the original lease; that the lessee should move its hangar thereon; and that, except as therein modified, the original lease should be in full force and effect and be applicable to the land substituted for that described in the original lease. The reason for the court's ruling out the contract does not appear.

Petitioner argues that the exclusion of the contract was prejudicial, because, according to the contractual valuation formula, the property at the time of the award had a value of $6,000 plus the value of the salvage, which it contended was either just about equal to or less than the cost of removing it. Petitioner produced as valuation witnesses two experienced engineers, Arndt Duval and Harold S. Chapin, and the representative of a wrecking and dismantling company, James A. Strand, all of whom were familiar with values in cases of this kind. Duval testified that the value of the salvage would be about equal to the cost of dismantling. Chapin and Strand testified that the latter would exceed the former by $2,530 and $3,000 respectively. Respondent's witness, Kermit O. Johnson, testified that the steelwork could be disconnected by un-

screwing some bolts and nuts and when removed would be worth $15,884; but according to his testimony he left out of account the cost of dismantling, which was necessary before the steelwork could be taken down, and which, as has been pointed out, according to the other witnesses was either equal to the amount of the salvage or exceeded it.

1. It is perhaps axiomatic that where property is taken by condemnation in the exercise of the power of eminent domain compensation should be made for the market value of the rights taken. Where the taking is of a leasehold interest, including a building on the leased land belonging to the tenant, the lessee is entitled to the market value of the leasehold and the building as a unit as compensation for the taking thereof. King v. Minneapolis Union Ry. Co. 32 Minn. 224, 20 N. W. 135. True, under the lease the hangar was to be regarded as between lessor and lessee as personalty, but for purposes of condemnation it was realty and was to be valued as such, for the plain reason that it was in fact realty and that it otherwise had no value except as salvage. See, United States v. 19.86 Acres of Land in East St. Louis (7 Cir.) 141 F. (2d) 344, 151 A. L. R. 1423. Hence, the rule of the King case for determining valuation applies here. While evidence of the value of the unexpired portion of the lease and the building separately is admissible as bearing upon the value of the two as a unit, the market value is what a buyer would be willing to pay for them as a unit and not the sum of the values of each considered separately. The ultimate question always is, and the jury should be instructed, that the value is that of the property as a whole and not the sum of the values of the separate items composing it. Here, the question for the jury was not what the leasehold and the hangar were worth separately as such, nor the sum of both those figures; but it was the price a buyer would be willing to pay for the leasehold with the hangar, subject to the terms and conditions of the lease. As said in the King case, where a leasehold interest with a factory on the leased land belonging to the lessee was taken (32 Minn. 228, 20 N. W. 137):

"* * * It was not the value of the buildings disconnected from the lease and machinery, and of the machinery disconnected from the lease and buildings, and of the lease disconnected from the buildings and machinery, but of the whole together, as connected with each other, which respondents were entitled to. They were not required to sell their property in fragments. The sum of the values of each part by itself, and separately from the others, was not necessarily the value of the whole plant as an entirety."

Hence, the instruction directing a determination of the values of the leasehold and of the hangar separately and the award of the sum of the two was erroneous.

The taking here differs from one where the land with a building thereon belonging to the lessor is taken and the lessee has a leasehold interest in the property as a whole and the lessor has the entire reversionary interest. In such cases, the award should be for the market value of the land and building as an entire property, subject to apportionment as between the landlord and tenant according to their respective interests. The value of the lessee's interest, and therefore the amount to be awarded him, "is the fair rental value of the premises less the amount of the rent for the remainder of the term." In re Assessment for Widening Third St. in St. Paul, 176 Minn. 389, 390, 223 N. W. 458.[2]

A still more different situation is involved where the entire property is taken, including the landlord's reversionary and the lessee's term interests, and the tenant owns the buildings on the leased land with right to remove them. In such cases, the award of compensation should be for the market value of the property as a whole with apportionment as between the lessor and lessee according to the respective interests. The lessee's interest includes the value of his buildings, not separately, but as part of his leasehold interest, and is to be valued accordingly. See, United States v. 19.86 Acres of

_____

[2]The rule has been applied in numerous cases. Kafka v. Davidson, 138 Minn. 301, 164 N. W. 980; *Id.* 135 Minn. 389, 160 N. W. 1021. See, United States v. Petty Motor Co. 327 U. S. 372, 66 S. Ct. 596, 90 L. ed. 729, rehearing denied, 327 U. S. 818, 66 S. Ct. 813, 90 L. ed. 1040.

Land in East St. Louis (7 Cir.) 141 F. (2d) 344, 151 A. L. R. 1423; United States v. Seagren, 60 App. D. C. 183, 50 F. (2d) 333, 75 A. L. R. 1491; Matter of City of New York, 192 N. Y. 295, 84 N. E. 1105, 18 L.R.A.(N.S.) 423, 127 A. S. R. 903. The Seagren case, relied on by respondent, involved such a situation and therefore is not in point here. Perhaps that case could also be distinguished on other grounds.

While the method of computing the value of the leasehold and the hangar thereon adopted in the instruction here would have been prejudicial to the lessee in King v. Minneapolis Union Ry. Co. 32 Minn. 224, 20 N. W. 135, *supra,* if it had been applied there, it was prejudicial to the condemnor here for the reason that it permitted the jury to include in the verdict value for the hangar in excess of what it actually had as part of the leasehold. Here, the lessee was permitted to show the value of the hangar separately and the value of the leasehold based upon its rental value for the unexpired portion of the lease. The rental value of the leasehold was based upon the rental value of the leased ground with the hangar thereon as a unit—not of the ground separately. The jury was permitted by the instruction to consider in determining the amount to be awarded not only the rental value of the land and the hangar as a unit for the unexpired portion of the lease, but also the value of the hangar separately as a structure. Thereby, the jury was permitted to include in the award not only such portion of the unitary rental value as was contributed by the hangar, but, in addition, the value of the hangar separately. As has been pointed out, the lessee was entitled to the reasonable value of the leasehold with the hangar thereon as a unit, and not the value of each separately. Moreover, it was not entitled to the value of the hangar separately, but only as a structure attached to the leasehold and subject to the terms of the lease. In determining the value of the hangar separately, an element of value would be the use thereof during its entire structural life, but in determining its value as part of the leasehold the use element would be limited to the unexpired four years of the lease—a fraction of its structural life. The instruction permitted the jury to

include in its verdict the excess of the value of the hangar separately over its value as part of the leasehold. This the lessee was not entitled to. As said in 1 Nichols, Eminent Domain (2 ed.) § 234:

"When however the lease has but a short time to run and the tenant's buildings and fixtures are not capable of removal without substantial depreciation in value, an interesting problem is presented. The building and fixtures may be such as to add largely to the market value of the property as a whole; but they add nothing to the value of the fee because they do not belong to the owner of the fee and they may add very little to the value of the leasehold interest. If the condemning party has to pay the whole additional value of the real estate due to the existence of the buildings and fixtures, either the landlord or the tenant will receive more than his interest is actually worth."

Of course the owner of land is entitled to the market value of the property taken for the use to which it may be most advantageously put and for which it would sell for the highest price in the market, but he is not entitled to more than that. Russell v. St. P. M. & M. Ry. Co. 33 Minn. 210, 22 N. W. 379; 2 Dunnell, Dig. & Supp. § 3050.

2. While market value is determined by actual sales and not by asking prices, an offer to sell property may be proved against the owner as an admission of its value at or near the time of the offer. Springer v. City of Chicago, 135 Ill. 552, 26 N. E. 514, 12 L. R. A. 609, and note; City of Enid v. Moyers, 196 Okl. 470, 165 P. (2d) 818; Houston v. Western Washington R. Co. 204 Pa. 321, 54 A. 166; 20 Am. Jur., Evidence, § 375. The tripartite contract ruled out below should have been received in evidence, for the reason that the lessee's agreement therein, that the leasehold and the hangar should be valued according to the contractual formula in case of condemnation by the lessor (petitioner), might be considered as being in the nature of an admission by it as to the value of the leasehold and hangar as a unit under the precise conditions of the taking here, except for the fact that the taking involved depriving the lessee of salvage of the hangar, to which it was entitled under the contract. But the

value of the salvage, taking into consideration the cost of recovering it, was capable of ascertainment, and, when that had been done, a pretty accurate estimate of the lessee's valuation of the leasehold and hangar as a unit could be made. Under the rule, the owner's admission as to the value of his property has an important bearing on the question of its true value, at least where he claims it is worth more than he has admitted it is worth. While the contract here does not measure petitioner's liability, for the plain reason that the taking here is not in the exercise of rights under it, it does have a bearing on what the value of the property taken is.

Reversed and new trial granted.

Mr. Justice Knutson, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.