STATE v. RAY ROBINSON AND OTHERS.
GLEN B. WILDER AND CELIA M. JACKSON, RESPONDENTS.
RIVER STATES OIL COMPANY, APPELLANT.

123 N. W. (2d) 812.

July 26, 1963—No. 38,724.

*Strong, Tully & Bush,* for appellant.

*John E. Daubney* and *Thomas, King, Daubney, Swenson & Collatz,* for respondents Wilder and Jackson.

*Walter F. Mondale,* Attorney General, *Rolf O. Slen,* Deputy Attorney General, and *Gerald H. Geheren,* Special Assistant Attorney General, for the state.

NELSON, JUSTICE.

This appeal involves an eminent domain proceeding brought by the State of Minnesota to acquire a parcel of land in the city of St. Paul for trunk highway purposes.

The property in question consisted of two platted lots upon which were maintained a gasoline service station and a house and frame garage. These were located on the northwest corner of the intersection of St. Anthony and Snelling Avenues, with approximately 80 feet of frontage on Snelling Avenue and 126 feet on St. Anthony, and were zoned commercial. The gasoline service station occupied the front or easterly 90 feet and the residence, a 1½-story house, and a frame garage occupied the remaining portion to the rear or west of said lots.

On September 21, 1956, Glen B. Wilder and Robert H. Jackson, copartners and owners of the lots, leased the service station to the Webb Oil Company of Minneapolis under written lease for a term of 10 years

from October 1, 1956, at a rental of $300 per month. Prior to the condemnation proceedings, the lease was assigned by Webb Oil Company to River States Oil Company (hereinafter called appellant), respondent Celia M. Jackson having then succeeded to the interest of her deceased husband, Robert H. Jackson.

The premises were designated in the condemnation proceedings as Parcel 62. Court-appointed commissioners filed a report on December 30, 1960, awarding $35,000 to owner-respondents Wilder and Jackson and $2,000 to appellant as tenant. Appellant appealed to the district court, where trial was had and a jury made an award of $42,700, apportioning $40,700 to Wilder and Mrs. Jackson as owners and $2,000 to appellant as tenant. The appeal to this court is from orders denying appellant's motions for judgment notwithstanding the verdict or a new trial.

The record shows that Mrs. Jackson testified that the market value of the property at the taking was $60,000. Wilder testified that the highest and best use of the property was for commercial use as a gasoline service station; that the property was located on a very busy intersection and that a large volume of traffic was good for a gasoline filling station operation; and that in the last 4 or 5 years there had been an appreciable growth of business in the area, with a shopping center, a bank, and stores. The value of the property at the taking was also placed at $60,000 by Wilder. He also testified on cross-examination that present traffic was one-third more than it had been 5 years ago; that appellant had made improvements such as cement work, electric wiring, shelving, and black-topping; and that the reasonable rental value of the service station at the time of the taking had increased by at least $100 per month. Wilder's testimony with respect to rental value of the station being $400 per month at taking was adopted by appellant.

The record also discloses that Mrs. Jackson and Wilder presented two real estate experts: Emil H. Nelson, who testified that the value of the property at taking was $44,000 and that $300 per month was minimum for rent of this service station with a potential of higher rent, and Joseph L. Bettendorf, who testified that the value at the time of

taking was $44,500 and the reasonable rental value of the station was $400 per month.

The state called Ronald L. Blomquist, one of the court-appointed commissioners. When questioned with respect to the award of the commissioners, he testified that the total award was $37,000 which, when broken down, allocated $35,000 to the owners and $2,000 to the owner of the leasehold. The state asked no further questions and successfully objected when appellant attempted to cross-examine Mr. Blomquist. As a result, an offer of proof was made by counsel for appellant, as follows:

"Mr. Strong: Offer to prove by this witness or at least I want to make a record of the fact that I intended to inquire of this witness as to whether or not the award was arrived, was, in fact, a compromise award. I also intended to inquire of this witness and to show by this witness that many of the facts which were considered and factors considered by the Commission and testified to before the Commission are not present in this case or in this testimony and that much of the testimony in this case was not testimony before the Commissioners to show that in arriving at their award there were many factors of value not considered by them."

The court refused to permit the cross-examination upon the state's objection that what was sought was incompetent, irrelevant, and immaterial, and did not come within the purview of Minn. St. 117.20, subd. 8(c).

Two real estate appraisers thereafter testified for the state. Gordon Earl Elmquist testified that the value of the property at the taking was $35,800 and that the rental value of the leasehold was the lease rental. However, on cross-examination Mr. Elmquist admitted that the rental value at the taking was more than $300 and that on a gallonage basis it could run from $330 to $534 per month. The other appraiser, Winfield A. Mitchell, testified that the value of the property at the taking was $33,300 and that fair rental value of the station was the lease rental. On cross-examination Mitchell admitted that the station was located on one of the most heavily traveled streets in St. Paul and that the development of the area had resulted in a substantial increase in traffic.

Appellant also made the following offer of proof:

"Mr. Strong [attorney for appellant]: In view of the Court's ruling, that on behalf of River States Oil Company as lessee that evidence as to the improvements, fixtures, personal property, the damage, depreciation, resulting thereto from the taking is inadmissible, [appellant] would like to make the following offer of proof, that if permitted to testify we would * * * testify that during the period of the lease, from 1956 to date of taking, certain leasehold improvements were made which were in a sense non-removable, to-wit, cement construction for tire racks $300, electrical wiring $511.13, shelving $75, blacktop paving $970, making a total of $1,856.13, which, on the basis of the term of the lease, would be depreciated four-tenths or the sum of $742.44, leaving a total net damage to the leasehold improvements by the taking as of the date of the taking of $1,113.69, and, further, that in the nature of removable improvements during the period of the lease, [appellant] erected and constructed and installed signs at a cost of $660.40, lights at a cost of $962.68, stoves at $98, one tire rack at $267, which is not the tire rack referred to in the award of the Commissioners, as there were two, and that a normal and fair depreciation of said personal property as of the date of the taking would be the sum of $250, leaving the value of $1,738.08 as of the date of the taking, and that the salvage value removed six years prior to the normal termination of the lease would have a salvage value of $650, leaving a net loss thereto of $1,088.08."

The following discussion then took place:

"The Court: So that you try to show a total net loss of approximately $2,000?

"Mr. Strong: 2,200.

"The Court: The Court is of the same opinion that under the unit rule as set forth in the various cases, more particularly Kafka vs. Davidson, 135 Minnesota 389, that evidence of such items of damage would be inadmissible. The Court realizes this is not in harmony with those federal cases which construe the fifth amendment in connection with the taking of property, but the Kafka case and other Minnesota cases are not in harmony with the federal decisions, and I feel we are

bound here by our state decisions until there is a change on those questions; therefore, your damage, of course, will be restricted to the value of the leasehold interest. However, in construing the value they can take into consideration as a determination of the value the entire premises with all its improvements as it existed on the date of the taking.

"Mr. Strong: Let me state this and see if it's agreeable. It is agreed and stipulated by and between the respondents Wilder and Jackson and [appellant] that the amount arrived at as the beneficial interest under the lease to River States Oil Company would be a sum payable over the balance of the lease, and that such total amount would be reduced by discounting the same to arrive at the present value—strike that present value—to arrive at the value as of December 30, 1960, and that by reference to the discount tables, then the value of the award discounted at six per cent over the balance of the term of the lease is the sum of $58, 58.9390.

"Mr. Daubney [attorney for the owners]: Isn't it 58 cents?

"The Court: Yes, that's $100. Take 58 cents now.

"Mr. Strong: That's right.

"The Court: $58 to buy $100.

"Mr. Daubney: On behalf of the respondents Jackson and Wilder, we will agree that this is substantially correct, and advise counsel our experts haven't used the same approach, but that the results they would testify to are substantially the same.

"Mr. Geheren [attorney for the state]: I probably will object at the time, *but it is a fact.* I'm not joining in the stipulation.

"The Court: The stipulation will be to this effect that if the, after the jury award is in, in determining the value of the leasehold interest, you will reduce that in the same proportion as though invested at six per cent, which gives you a return of .58 over the period of the balance of the lease, and the Court may adjust the verdict accordingly." (Italics supplied.)

In effect, the owners and appellant stipulated that the present value at the taking of $1 payable monthly over the balance of the term of the lease (69 months), discounted at 6 percent, was $0.589390.

One of the questions involved in this appeal is: Did the legislature by

its enactment in 1959 of Minn. St. 117.20, subd. 8(c), limit an adverse party's right to cross-examination of a condemnation commissioner who is called by one of the parties as its witness at the trial on an appeal from the commissioners' award of damages? Another question is whether upon the record the verdict of the jury apportioning to appellant as owner of the leasehold $2,000 from the total award of $42,700 was justified and without prejudice to its rights.

■ Sections 117.14 and 117.20, subd. 8(c), provide that the trial on appeal to the district court in condemnation proceedings shall be a trial de novo and shall be conducted under the Rules of Civil Procedure. State, by Lord, v. Pearson, 260 Minn. 477, 110 N. W. (2d) 206.

Prior to the enactment of § 117.20, subd. 8(c), the general practice was to hold an award of a commissioner inadmissible. That statute provides that a commissioner in a condemnation proceeding may be called by any party as a witness to testify as to the amount of the award of the commissioners.

The trial court apparently took the position that the statute allowed the calling of a commissioner only to testify as to the amount of the award and not to be questioned on how it was arrived at.

However, in the Pearson case we said (260 Minn. 485, 490, 110 N. W. [2d] 212, 216):

"* * * It is open to both sides to call, as a witness, one or more of the court appointed commissioners since the enactment of § 117.20, subd. 8(c), and the privilege to cross-examine is open as in the case of any other adverse witness.

* * * * *

"Certainly the legislature must be deemed to have enacted the provision realizing that condemnation trials are adverse proceedings. We think that to presume that the legislature intended to abrogate basic rights of parties to cross-examination would result in an absurdity."

With reference to the commissioner who was called as a witness and cross-examined in the Pearson case, we said (260 Minn. 491, 110 N. W. [2d] 216):

"* * * When this witness was called, sufficient facts were elicited on direct examination to qualify him as an expert to testify as to values of

real property and more specifically as to a before and after value of the property involved in the instant case. It is our view that the general rule that experts may be cross-examined to find the basis or foundation of an expressed opinion is applicable to this witness. *The general rule is also applicable that based upon the sound discretion of the trial court, cross-examination should not be limited strictly to matters brought out on direct examination.* The record indicates that Smaby was not put in the position of having to justify the award but merely was called upon to explain the legal basis and elements of the award, and how it was computed, since it was characterized as such in his value testimony and opinion expressed. The latitude which the trial court permitted in the cross-examination of Smaby was within the discretion of the trial court." (Italics supplied.)

The owners contend that since the direct examination did not touch the method used in reaching the award, it would be improper to allow cross-examination on that subject. The rule regarding the scope of cross-examination has been qualified to the extent that in Zuber v. N. P. Ry. Co. 246 Minn. 157, 175, 74 N. W. (2d) 641, 654, we said:

"* * * It may, dependent upon the issues involved and the situation and the circumstances presented, be error to refuse to allow such cross-examination as may have a reasonable tendency to throw light on a situation or a transaction, and this even though the inquiry is as to matters not touched upon in the direct examination."

In determining whether appellant should have been permitted to cross-examine the commissioner as to the basis of his opinion, it should not be overlooked that he had testified as to the total award and its breakdown between owners and tenant. In 20 Dunnell, Dig. (3 ed.) § 10318, the scope of cross-examination on the merits is defined as follows:

"* * * [I]t is competent to call out not only any facts contradicting, explaining, or qualifying any particular facts stated on the examination in chief, but also any fact tending to rebut or modify any conclusion or inference from such facts. If a witness on the direct examination testifies to one part or phase of a transaction he may be questioned

on cross-examination as to every part or phase of the same transaction."

We think it was error not to allow cross-examination in this case, for State, by Lord, v. Pearson, *supra,* made it clear that appellant had the privilege of cross-examining the commissioner as fully as any other adverse witness.

 Minn. Const. art. 1, § 13, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

Minn. St. 117.02, subd. 2, provides:

"The word 'taking' and all words and phrases of like import include every interference, under the right of eminent domain, with the ownership, possession, enjoyment, or value of private property."

Subd. 3 of that section provides:

"The word 'owner' extends to all persons interested in such property as proprietors, tenants, encumbrancers, or otherwise."

What, then, is just compensation to appellant as tenant under the lease in question? Appellant assigns as error the trial court's ruling that evidence as to the value of the improvements and fixtures it added to the property during the term of the lease was inadmissible under the unit rule of valuation.

In this state the measure of damages upon condemnation of a leasehold is "the fair market value of the estate so taken" where the complete leasehold is condemned, and is "the difference between the fair market value of the entire leasehold estate and the fair market value of the portion thereof not taken" where only a portion of the estate is taken. Kafka v. Davidson, 135 Minn. 389, 394, 160 N. W. 1021, 1023.

In apportioning damages between landlord and tenant the rule enunciated in State, by Youngquist, v. Anderson, 176 Minn. 525, 526, 223 N. W. 923, 924, is followed:

"The rule is that the gross damages to be awarded shall first be determined, and then the award is to be apportioned among those who

have various interests in the land. The total amount of damages must be the same whether the land is owned by one person or several."

In Seabloom v. Krier, 219 Minn. 362, 365, 18 N. W. (2d) 88, 90, Mr. Justice Olson said:

"* * * We think that under these explicit terms of the statute it became the duty of the commissioners to make awards compensating *both* owners and tenants for all property taken. The respective interests of the parties constituted property rights taken and appropriated by the state. In conformity with that duty, they made the award to both the fee owner and his tenants. It seems clear that in so doing they concluded that such rights and interests of the owner and his tenants should be left for future determination by the parties themselves or, if they could not agree, that such determination should be made by the court. In so disposing of that issue, they were but following our decision in Kafka v. Davidson, 135 Minn. 389, and 394, 160 N. W. 1021, and 1023, where we held that an award of damages in condemnation—'may be made in gross and be apportioned thereafter between the various parties in interest according to their interests'; that all such 'parties are bound and concluded by the award as fixed and determined' in such condemnation; that 'Any party entitled to share in the award may bring an action for his share against any other party to whom such share has been paid'; and where a leasehold estate has been taken 'it is well settled that the measure of damages is the fair market value of the estate so taken.' "

The "unit rule" of valuation forbids the separate appraisal of land and improvements upon it. United States v. City of New York (2 Cir.) 165 F. (2d) 526, 528, 1 A. L. R. (2d) 870. Appellant concedes that the "unit rule" should have been applied as far as the total award was concerned, but contends that as between the owners and appellant, testimony as to the value of the fixtures separate from the leasehold should have been admitted as bearing on the apportionment between the owners and appellant. We believe that appellant's contention is correct.

Mr. Justice Mitchell in King v. Minneapolis Union Ry. Co. 32 Minn. 224, 228, 20 N. W. 135, 137, made what appears to be the first reference in this state to the "unit rule" of valuation when he stated:

"* * * It was not the value of the buildings disconnected from the lease and machinery, and of the machinery disconnected from the lease and buildings, and of the lease disconnected from the buildings and machinery, but of the *whole together,* as connected with each other, which respondents were intitled to. They were not required to sell their property in fragments. The sum of the values of each part by itself, and separately from the others, was not necessarily the value of the whole plant as an entirety." (Italics supplied.)

In that case proceedings were instituted to condemn for railway purposes a leasehold interest in certain lots. After the commissioners made an award, the owners of the leasehold interest appealed to the district court where the jury awarded damages of $33,000. The railway company appealed, alleging that the lower court erred in allowing an improper element to be taken into consideration in ascertaining the value of the leasehold interest. At the trial the owners were allowed to describe completely the premises, the size of the buildings, the nature and character of machinery therein, and the uses to which the machinery was put. Witnesses also testified as to the value of the leasehold interest, including the buildings and machinery.

In commenting upon the introduction of the foregoing evidence, Mr. Justice Mitchell stated (32 Minn. 225, 20 N. W. 136):

"We think it may be stated as elementary that a person is entitled to the fair value of his property for any use to which it is adapted and for which it is available, and for which it may be sold. * * * It is, we think, equally true that any evidence is competent and any fact is proper to be considered which legitimately bears upon the question of the marketable value of this property."

■ The impossibility of complete adherence to the unit rule in valuation of a leasehold is demonstrated in M.A.C. v. Hedberg-Freidheim Co. 226 Minn. 282, 32 N. W. (2d) 569. There, the Metropolitan Airports Commission brought condemnation proceedings to acquire a leasehold interest in property in which it had acquired the rights of the fee owner. The lease exacted a rental of $100 per month for a term of 10 years and provided that buildings and structures placed on the land by the lessee should not become part of the realty, thereby permitting

the lessee to remove a hangar at the end of the term. At the time of the commissioners' award the lease had 4 years to run and the lessee's hangar, a lean-to, and certain personal property remained on the land. At the trial the lessee introduced evidence to show the separate values of the leasehold and hangar. The court instructed the jury that they (226 Minn. 284, 32 N. W. [2d] 571) "may find it necessary to determine what was the reasonable market value of the leasehold itself as well as the reasonable market value of the hangar itself * * * and the sum of these two items, if you use that method, will constitute the amount to which the Company is entitled and to be inserted in your verdict."

This court held the instruction erroneous, stating (226 Minn. 286, 32 N. W. [2d] 572):

"* * * Here, the question for the jury was not what the leasehold and the hangar were worth separately as such, nor the sum of both those figures; but it was the price a buyer would be willing to pay for the leasehold with the hangar * * *."

We also made the following distinction (226 Minn. 286, 32 N. W. [2d] 572):

"* * * While evidence of the value of the unexpired portion of the lease and the building separately is admissible as bearing upon the value of the two as a unit, *the market value is what a buyer would be willing to pay for them as a unit and not the sum of the value of each considered separately.*" (Italics supplied.)

Applying the foregoing rules to the instant case, the question for the jury to determine in apportionment of the award between appellant and the owners is not what the leasehold and fixtures were worth separately, but what price a buyer would be willing to pay for the leasehold and the fixtures *together.* The evidence relating to the value of the unexpired portion of the lease and to the value of the fixtures or improvements is admissible separately as bearing on the value of the two as a unit, but not as items the sum of which constitute market value. Consequently, it was error to hold appellant's offered evidence with respect to fixtures or improvements inadmissible.

■ In Seabloom v. Krier, *supra,* this court approved the holding of

Woolworth Co. v. Berlin, 82 N. H. 153, 154, 130 A. 741, that a "leasehold estate was property and was protected" by the "constitutional guaranty" of just compensation, and that if the whole or any part of the lessee's right has been taken for public use, he is entitled to compensation therefor. We also discussed United States v. General Motors Corp. 323 U. S. 373, 65 S. Ct. 357, 89 L. ed. 311, which involved ascertainment of the just compensation required by U. S. Const. Amend. V, where, in the exercise of the power of eminent domain, the government took temporary occupancy of a portion of a building leased to a tenant holding under a long-term lease and we emphasized the importance of the concluding paragraph of that opinion, which states (323 U. S. 383, 65 S. Ct. 362, 89 L. ed. 321):

"For fixtures and permanent equipment destroyed or depreciated in value by the taking, the respondent is entitled to compensation. An owner's rights in these are no less property within the meaning of the Fifth Amendment than his rights in land and the structures thereon erected. And it matters not whether they were taken over by the Government or destroyed, since, as has been said, destruction is tantamount to taking. This is true whether the fixtures and equipment would be considered such as between vendor and vendee, or as a tenant's trade fixtures. In respect of them, the tenant whose occupancy is taken is entitled to compensation for destruction, damage or depreciation in value. And since they are property distinct from the right of occupancy such compensation should be awarded not as part of but in addition to the value of the occupancy as such."

A leading Iowa decision contemplates the problem of determining what evidence is admissible in determining market value in the condemnation of a leasehold. In Des Moines Wet Wash Laundry v. City of Des Moines, 197 Iowa 1082, 1086, 198 N. W. 486, 488, 34 A. L. R. 1517, 1521, the court stated:

"* * * Plaintiff sought to show what the lease was worth. Here we have a piece of property put to a useful purpose and in determining the value thereof before and after the injury, the machinery and fixtures which gave to the property its distinctive character as a laundry must be

taken into account. *The lease was involuntarily terminated, and many items that are not strictly items of damage become essential as a matter of evidence, in fixing the value of the leasehold.*" (Italics supplied.)

In United States v. 425,031 Square Feet of Land (3 Cir.) 187 F. (2d) 798, 800, the court stated:

"* * * Where a complete leasehold is taken the measure of damages is the value of the use and occupancy of the leasehold for the remainder of the tenant's term, plus the value of the right to renew in the lease, less the agreed rent which the tenant would pay for the use and occupancy. In proving the fair market value of the leasehold, appellants were permitted to introduce expert testimony as to the value of the leasehold without fixtures, and the value of the leasehold as enhanced by the fixtures.[1] The court's charge to the jury that they could consider the improvements as elements to be weighed in determining the fair value of the leasehold was a correct statement of the law."

■ We have already alluded to the stipulation between appellant and the owners that the value at taking of $1 payable monthly over the balance of the term of the lease was $.589390. At the close of the evidence appellant moved for a directed verdict of $5,893.90 based on the evidence that the reasonable rental value at the time of taking was $400 per month and application of the discount factor agreed upon by the owners and appellant. The motion was denied. Appellant repeated the substance of this motion in its request for instructions.

It appears also that the stipulation was neither submitted to the jury nor applied to the verdict. At any rate it would not, under the circumstances, have been prejudicial to submit it for the jury's consideration. On the trial below the lease was withheld from the jury on appellant's own motion to the effect that the court instruct the jury that a lease with a rental of $300 per month, 69 months remaining, was in existence. The owners opposed that motion, contending that the lease should be given to the jury for their consideration in determining the intent of the

---

[1]The necessity of departure at times from the unit rule in valuation of fixtures is discussed in Winner, *Rules of Evidence in Eminent Domain Proceedings,* 13 Ark. L. Rev. 10, 23.

parties. In view of the court's prior ruling that evidence of the fixtures and improvements added by the tenant would not be admissible, the ruling did not reach the question of the application of the lease to that point.

In every condemnation case involving a leasehold interest the lease should be in evidence and go to the jury, for it is the vehicle which defines the rights of the parties. This situation is unlike a case involving the valuation of real property where comparable sales may be used. Each leasehold is sui generis. In People ex rel. U. S. Rubber Co. v. Knapp, 232 N. Y. 153, 158, 133 N. E. 429, 431, the New York Court of Appeals stated:

"* * * The rights and interests of the owner of the fee and the holder of the leasehold interest are defined by the lease in force between them. Recourse to the terms of that instrument is, therefore, essential to ascertain the extent of the estates of the landlord and tenant. Therein is contained the term of the leasehold interest and any right to renewals of the same, the consideration to be paid by the tenant, the time of payment and the result of a default in payment, likewise all covenants to be performed by the tenant, the rights of the landlord and particularly in the event of a default of the tenant or at the end of the term to resume possession of the property without allowance therefor, these and other provisions of the lease are material to be considered in reaching a determination as to the actual value of the lease."

The order denying appellant's motion for a new trial is reversed. However, since there is no dispute as to the correctness of the total award assessed against the State of Minnesota, any new trial will be had only upon the issue of the apportionment of damages as between respondents Wilder and Jackson and appellant.

Reversed and remanded.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On October 4, 1963, the following opinion was filed:

NELSON, JUSTICE.

Under Minn. St. 607.01 costs in the supreme court may be allowed, in the discretion of the court, to the prevailing party, upon a judgment

in his favor on the merits, not exceeding $25. The same statute also provides that in all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred.

The court has no discretion but to allow prevailing party its disbursements. Graf v. Montgomery Ward & Co. Inc. 234 Minn. 485, 49 N. W. (2d) 797; State ex rel. South St. Paul v. Hetherington, 240 Minn. 298, 61 N. W. (2d) 737.

Supreme Court Rule XV (222 Minn. xxxvii) provides that unless otherwise ordered the prevailing party shall recover costs in the amount provided by the statute.

A prevailing party has been defined as one who procures a reversal or modification of the order or judgment from which the appeal is taken. Sanborn v. Webster, 2 Minn. 277 (323); Henderson v. Northwest Airlines, Inc. 231 Minn. 503, 511, 43 N. W. (2d) 786, 792.

Under the circumstances existing in the case, the appellant, River States Oil Company, is the prevailing party. The taxation of costs by the clerk is therefore affirmed.